Honorable James Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON, SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR19-117 JLR |
| | ) | |
| Plaintiff, | ) | DEFENSE REPLY TO GOVERNMENT |
| v. | ) | OPPOSITION TO DISMISSAL |
| | ) | |
| SHAWNA REID, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

When the only authority figure in the room wrongly explains the rules, it matters. When the only authority figure in the room asks misleading questions that hide the truth it matters. When the only authority figure does both these things in the same proceeding, the proceeding is tainted beyond repair.

The motion to dismiss shows (1) that the government explicitly and incorrectly told Ms. Reid and the grand jury that the immunity order required her to implicate herself and (2) that the prosecutors questioned Ms. Reid in bad faith about when she met Chris G. The government responds by not disputing the facts and offering only muddled and illogical excuses as a defense to the irreparable prejudice caused by its errors.

Michael Nance
Attorney at Law
P.O. Box 11276
Bainbridge Island, WA 98110
(206) 624-3211

### I.   The Government's Excuses for Falsely Telling Ms. Reid She Must Incriminate Herself Lack Merit

The government trots out a series of excuses for its mischaracterization of the compulsion order and its false statement that the order compels Ms. Reid to incriminate herself.

It shrugs off the prosecutor's false statement as no more than clumsily worded "advice [that] was at bottom, correct." Response at 10. It says Ms. Reid had already admitted committing a crime by invoking the Fifth Amendment and thus could not have been prejudiced by being told she had to incriminate herself. It protests that the prosecutor acted with no devious intentions. It posits that because Ms. Reid had a lawyer, the error had no impact. It claims the misstatement caused no prejudice because Ms. Reid, after being misinformed, still lied to the grand jury. These propositions are factually unsupported, illogical, and legally untenable.

Excuse 1-- The prosecutor did not mean to mislead.   Neither Ms. Reid nor the grand jury knew what the prosecutor thought or intended to say. They only knew what he actually said. Probably, the prosecutor did not mean to explain the order incorrectly, but the defense motion does not allege that his wrong explanation stemmed from malicious intent. The critical issue is what he said and the impact it had.

Equally meritless is the contention that the prosecutor's misstatement was cured by reading the order in full. The order is filled with boilerplate and lengthy descriptions of who authorized the order. The explanation purports to take a long and confusing statement and boil it down to its essence. Which is more likely to be understood and acted upon, a document written in legalese or a succinct explanation of the legalese?

Excuse 2-- Ms. Reid could not have been prejudiced because she "had legal representation." The government does not explain how a lawyer sitting outside the room is in any position to know what the prosecutor is saying or to correct the error. Nor does it explain how a witness with no legal sophistication is supposed to question the accuracy of the prosecutor's explanation.

Ms. Reid, when she entered the grand jury room, had little or no understanding of what the immunity order required. Asked if she had immunity, she shook her head no and went out of the grand jury room to speak with her counsel. (The government says that when Ms. Reid was asked if she understood she had immunity she "made a non-verbal response." Response at 6. But the transcript indicates that when asked about immunity, "witness moves head from side to side." In the real world, when someone moves her head from side to side, this means "no.") After signaling that she did not understand she had immunity, Ms. Reid went outside to speak with her lawyer. The transcript shows that she left

the room at 3:45 p.m. and that questioning resumed at 3:46. Commonsense suggests that in the minute that Ms. Reid was with her attorney, the most she could have been told was that she did have immunity. A minute does not allow enough time to review the fine points of the immunity letter and, in any event, Ms. Reid's lawyer could hardly have anticipated the incorrect explanation that had not yet occurred.

Ms. Reid went back into the room, minus her lawyer. The prosecutor then read verbatim the immunity letter. Without ascertaining what, if anything, Ms. Reid understood about the letter, he took it upon himself to explain what the letter really meant. The first thing he said to Ms. Reid and the grand jury was "Generally, it means the following three things. You can no longer invoke your Fifth Amendment right against self-incrimination as **you have been compelled under this order to incriminate yourself, to implicate yourself.**" GJ 7-8 (emphasis supplied). He did not specify what crimes Ms. Reid was compelled to admit, but he made crystal clear that she had to confess to something and then promptly started his questioning. Nothing Ms. Reid's lawyer did or could have done had any impact on this situation.

Excuse 3—Ms. Reid had already admitted guilt--The government says that Ms. Reid was not prejudiced by being told she must incriminate herself because her invocation of the Fifth Amendment shows she had already admitted guilt.

"And, of course, as the prosecutor knew, the Defendant, through counsel, had asserted her privilege, suggesting that she believed that truthful testimony would, in fact, incriminate her."  Response at 10.

The government misunderstands what invoking the Fifth Amendment means.  One might expect the government to be familiar with the long-standing precedent that an innocent person can invoke the Fifth Amendment and that the invocation is not tantamount to admitting guilt.  See, *Ohio v. Reiner*, 532 U.S. 17 (2001)  (holding that an innocent person may invoke the Fifth Amendment), *see also Clifford v. Trump*, 2018 U.S. Dist. Lexis 122522 at 3 (C.D. Ca., 2018), quoting *Slochower v. Bd. of Higher Ed. of New York*, 350 U.S. 351 (1956), ("privilege against self-incrimination would be reduced to a hollow mockery if its exercise could be taken as equivalent either to a confession of guilt or a conclusive presumption of perjury".")

It is especially surprising and troubling that the government would make a gross misstatement about the Fifth Amendment protection against self-incrimination while defending a gross misstatement about the compulsion order.[1]

---

[1] The notion that invoking the Fifth Amendment is only for the guilty is a misconception shared by many, including the President ("If you're not guilty, why are you taking the Fifth?" [said by Mr. Trump at Iowa campaign rally, September 2016]).  There is no way of knowing how many of the grand jurors might have embraced this mistaken view.  One might, however, expect the Justice Department would hew to the law instead of popular opinion.

Excuse 4--Ms. Reid lied anyway, so there is no harm. The government does not even pretend to explain why Ms. Reid's testimony was not prejudicially affected by being told at the start that she had to confess to some crime (what crime was never made clear) in order not to violate a federal court order.

The illogic of such an argument is apparent on its face. The government created a situation in which Ms. Reid had to admit to a crime even if she had not committed one or be in violation of a federal court order. Under any common sense analysis, the testimony Ms. Reid gave immediately following the prosecutor's instruction that she must implicate herself had to have been affected by the erroneous instruction.

Moreover, the government's statement assured the very grand jury that would determine whether to criminally indict Ms. Reid that a federal court had already branded Ms. Reid as a criminal. Again, the government does not explain why labeling Ms. Reid in this fashion could not have affected the grand jury's assessment of her credibility.

Excuse 5—There really was not any misstatement, just inexact language. The government variously characterizes the misstatement as "a single imprecise remark", "perhaps poorly worded", "less than ideally worded" and "less than fully precise". Response at 3, 10, 11, 12.

Michael Nance
Attorney at Law
P.O. Box 11276
Bainbridge Island, WA 98110
(206) 624-3211

The Court should not accept these non-apologies. The prosecutor's statement that Ms. Reid was compelled to incriminate herself was neither imprecise nor poorly worded. To the contrary, the Assistant United States Attorney clearly and succinctly told Ms. Reid and the grand jury that the order required her to implicate herself. The problem with the statement is not its syntax but its content.

## II. The Government Admits the Factual Basis for the Bad Faith Questioning Claim and Fails to Even Acknowledge a Prosecutor's Good Faith Obligation to the Grand Jury, the Court, and the Defendant

The government's excuses for its bad faith questioning of Ms. Reid about when she met Chris G are equally unconvincing.

The government admits that the questions about when Ms. Reid met Chris G were relevant and important. Response at 12. It also admits that the notes of both the agents include Ms. Reid stating at the initial interview that she met Chris G when 18 or 19. Response at 4, lines 12-13, 17-18. It does not deny that Ms. Reid specifically told the agents at the next interview that she met Chris G in 2003 when she was 18.

Ms. Reid's motion to dismiss details the prosecutor's repeated efforts to confront Ms. Reid about when she met Chris G and to suggest that she initially told the agents she was 16, that the agents' notes showed this to be true, and that her

grand jury testimony that she was 18 was a lie.  The government cannot deny that this is what the transcript shows, although it quibbles about whether the questions constituted a "theme."  Response at 13, ftn. 3.

Faced with indisputable evidence of bad faith questioning on the prosecutors' part, the government can only say that it was not about what Ms. Reid said about what Chris G told her about the murder and therefore there is no prejudice.   Response at 13.

Nowhere does the government acknowledge that this Circuit's precedents impose a duty of good faith on the part of the prosecutor to the grand jury, the court, and the defendant.  *United States v. Basurto,* 497 F.2D 781, 786 (9th Cir. 1974).

The Response does not even mention either *Basurto* or *United States v. Samango*, F.2d 877 (9th Cir. 1979), the two leading cases in this circuit on dismissal of an indictment for prosecutorial misconduct during the grand jury proceedings.  It rather asks the Court to ignore the prosecutor's bad faith questioning without either disputing the factual predicates for the bad faith questioning claim or explaining why using the questioning to paint Ms. Reid as a liar before a grand jury tasked with deciding whether she was a liar is not prejudicial.

### III. Ms. Reid Is Entitled to Equal Treatment with Michael Flynn and the Government Cannot Explain Why She Is Not

The government finds it "remarkable" that Ms. Reid would have the temerity to suggest that she is entitled to the same treatment by the Justice Department as Michael Flynn. The motion to dismiss the indictment points out the government believed its ethical obligations compelled it to dismiss a case in which the defendant had twice pleaded guilty. As part of its rationale for moving to dismiss, the government told the district court in Flynn, that because the agents' reports detailing the defendant's perjury were incomplete and that the interview of Mr. Flynn went unrecorded it might not be able to prove Mr. Flynn guilty.

In their respective cases the FBI conducted unrecorded interviews of both Ms. Reid and Michael Flynn. The FBI reports of both interviews were misleading and inaccurate. The government used these circumstances as a rationale for dismissing Flynn's case. It does not explain why Ms. Reid is not entitled to similar treatment in her case.

Respectfully submitted this 21st day of July, 2020.

/s/ Michael Nance, WSBA #13933
/s/ Robert Gombiner, WSBA #16059
Attorneys for defendant Shawna Reid

Michael Nance
Attorney at Law
P.O. Box 11276
Bainbridge Island, WA 98110
(206) 624-3211

**Certificate of service**

I hereby certify that on the 21st day of July, 2020, I electronically filed the foregoing with the clerk of the court using the CM/ECF system. Notice of this filing will be sent electronically to counsel for other parties of record.

/s/ Michael Nance