1

2

3

4

5

6

7

8

9

10

11

12

13

14

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

SHAWNA REID,

Defendant.

CASE NO. CR19-0117JLR

ORDER ON MOTION TO
DISMISS, MOTION FOR
KASTIGAR HEARING, AND
MOTION TO COMPEL
DISCOVERY

## I.    INTRODUCTION

Before the court are three motions filed by Defendant Shawna Reid:  (1) a motion

to dismiss the indictment (*see* Mot. to Dismiss (Dkt. # 52); *see also* Mot. to Dismiss

Reply (Dkt. # 65)); (2) a motion for a *Kastigar* hearing (*see* Mot. for Hr'g (Dkt. # 56));

and (3) a motion to compel discovery (*see* Mot. to Compel (Dkt. # 55); *see also* Mot. to

Compel Reply (Dkt. # 66)).  Plaintiff United States of America ("the Government")

opposes the motions.  (*See* Mot. to Dismiss Resp. (Dkt. # 61); Mot. for Hr'g Resp. (Dkt.

# 62); Mot. to Compel Resp. (Dkt. # 64).)  The court held argument on the motions.  (*See*

8/4/20 Min. Entry (Dkt. # 67).)  The court has considered the motions, the parties'
submissions filed in support of and in opposition to the motions, the relevant portions of
the record, the argument of the parties, and the applicable law.  Being fully advised, the
court DENIES Ms. Reid's motion to dismiss, DENIES Ms. Reid's motion for a *Kastigar*
hearing, and GRANTS in part and DENIES in part Ms. Reid's motion to compel.

## II.  BACKGROUND

**A.   The Indictment**

On June 20, 2019, a grand jury indicted Ms. Reid for one count of False
Declarations Before the Grand Jury in violation of 18 U.S.C. § 1623 and one count of
Obstruction of Justice in violation of 18 U.S.C. § 1503.  (*See* Indictment (Dkt. # 3) at
1-3.)  Both charges relate to alleged conflicts between Ms. Reid's statements to law
enforcement agents and her sworn testimony before a grand jury.  (*See id.*)

The Government alleges that Ms. Reid told law enforcement agents on August 23,
2017 that an individual who the Government refers to as "Suspect #1" "bragged to [Ms.
Reid] about Suspect #1's involvement in the murder of a judge or lawyer that lives on top
of a hill, and also stated several times that Suspect #1 had called the murder victim an
'attorney general.'"[1]  (*See id.* at 2.)  According to the Government, on February 28, 2018,
during Ms. Reid's grand jury testimony, she falsely denied making these statements to
law enforcement officials and instead offered the following testimony:

---

[1] The court directs Ms. Reid's counsel to use the name "Suspect #1" to describe the
individual at issue in all future pleadings in order to protect the secrecy of the grand jury
proceedings.

1  Q.    In your first interview, did you say to the FBI that [Suspect #1]
2  bragged to you about [Suspect #1's] involvement in the murder of a, quote, judge or an attorney that lives on top of a hill, end quote?

3  A.    No.

4  Q.    In your first interview, did you say to the FBI that [Suspect #1]
5  bragged that the murder victim was someone of importance like a judge or an attorney general?

6  A.    No.

7  (*Id.* at 1-2.)  The alleged contradictions between Ms. Reid's August 23, 2017, statements

8  and her February 18, 2018, grand jury testimony serve as the basis for the Government's

9  false declarations charge.

10  The Government's obstruction of justice charge is based on similar grounds.  The

11  Government alleges that Ms. Reid made false statements in two additional law

12  enforcement interviews after August 23, 2017, and in her grand jury testimony regarding

13  "whether Suspect #1 had told [Ms. Reid] about Suspect #1 's involvement in the murder

14  of a lawyer, judge, or attorney general who lived on a hill and whether [Ms. Reid] had

15  reported what Suspect #1 told her when she was interviewed by law enforcement officials

16  on August 23, 2017."  (*Id.* at 2-3.)  The additional law enforcement interviews at issue

17  took place on August 25, 2017, and December 7, 2017.  (*See id.*)

18  **B.    Ms. Reid's Grand Jury Testimony**

19  Ms. Reid's current motions relate to other portions of her grand jury testimony.

20  Specifically, Ms. Reid takes issue with two events that occurred during her testimony:

21  (1) Government counsel's description of an immunity and compulsion order issued

22  *//*

ORDER - 3

1  against her; and (2) questioning about the year in which she met Suspect #1.  (*See* Mot. to

2  Dismiss at 2-11.)

3         Ms. Reid testified in front of the grand jury pursuant to an immunity and

4  compulsion order entered by the Honorable Ricardo S. Martinez on February 26, 2018.

5  (*See* Reid Exhibits (Dkt. # 54) (sealed), Ex. 1 at 1-2.)  Judge Martinez's order compelled

6  Ms. Reid to testify before the grand jury and assured her that "no testimony or other

7  information compelled under this Order or any information directly or indirectly derived

8  from such testimony or other information, may be used against [her] in any criminal case,

9  except a prosecution for perjury, giving a false statement, or otherwise failing to comply

10  with the Order."  (*Id.* at 2.)  During Ms. Reid's grand jury testimony, the Government

11  read the immunity order to Ms. Reid verbatim while Ms. Reid had a copy of the order in

12  front of her.  (Reid Exhibits, Ex. 9 at 5:20-7:21.)  After reading the order, Government

13  counsel explained the order to Ms. Reid as follows:

14      Q.    [Mr. Wheatley] Now I'd like to explain generally what that order
means.  All right?  Generally, it means these following three things:  You can
15  no longer invoke your Fifth Amendment privilege against self-incrimination
as you have been compelled under this order to incriminate yourself, to
16  implicate yourself.

17      Second, what you say, what information you provide can't be used
against you in the event you're charged.  And that's what you say in this
18  grand jury not what you've previously said or done in the past.  What you
say here.  All right?

19

20      And that there are exceptions to this order.  Okay?  That if you perjure
yourself, you give a false statement, or you otherwise fail to comply with the
order.  So if you lie here, you provide false statements here, you fail to
21  comply with the order here, those are exceptions to this order.  You can still
be liable for that.  Do you understand that?

22

ORDER - 4

1    A.    Okay.  Yeah.

2    Q.    Okay.

3    Q.    [Mr. Clymer]  It's not just that you can be liable for false statements.
     Any testimony you give today could be used against you if you're prosecuted
4    for perjury or making a false statement.  Do you understand that?

5    A.    Yes.

6    Q.    In other words, you have no protection under that immunity order for
     making any false statements here today.
7
     A.    Right.
8
     Q.    [Mr. Wheatley]  Now  you  understand  that  no  representations
9    whatsoever have been made to you about immunity for conduct that you may
     have committed before today.  All right?  Including for what you have said
10   to investigators in prior interviews.  All right?  That order that was read
     allowed to you applies to what's said here.
11
     A.    For today.
12
     Q.    Yes.  For what's stated here.
13
     A.    Okay.
14
     Q.    Do you understand that?
15
     A.    Yes.
16
(*Id.* at 7:21-9:14.)  After providing this explanation, Government counsel confirmed with
17
Ms. Reid that she understood that her counsel was present outside the grand jury chamber
18
and available to consult with Ms. Reid at any time.  (*Id.* at 9:16-25.)
19
           At multiple points during Ms. Reid's testimony, the Government asked Ms. Reid
20
questions regarding her history with Suspect #1 and the specific timeframe in which she
21
//
22

ORDER - 5

1    met him.  (*See id.* at 11:5-12:25, 34:25-35:10.)  The following passages contain the

2    relevant testimony:

3         Q.      And when did you meet [Suspect #1]?

4         A.      I met him when I was roughly 18.

5         Q.      And do you recall what year that was?

6         A.      I worked at the mortgage business so I was—roughly 2003.

7         Q.      And was it after 2001?

8         A.      Yes.

9         Q.      So you're saying it's 2003?

10        A.      2003.

11   (*Id.* at 11:10-18.)

12        Q.      Now that interview, that first interview with the FBI, did you say that
          you met [Suspect #1] in the year 1999 to 2000?

13

14        A.      No.

          Q.      Now, in that first interview, did you say to the FBI that you dated
15        [Suspect #1] on and off through 2006?

16        A.      No.

17   (*Id.* at 14:13-19.)

18        Q.      And with that qualifying statement you've made, in any interview, did
          you ever tell the FBI that you met [Suspect #1] in the year 1999 to 2000?

19

20        A.      Not that I recall, and if I did, it was a mistake because I was 16.  I was
          —that was 2001, and that's when I worked for Kodiak Mortgage.  And I was
          with a guy named Darrell.  I didn't meet [Suspect #1] until two years later,
21        which was 2003, which is when I was 18.

22   (*Id.* at 15:24-16:7.)

1
2

> Q.    And when you spoke to [the FBI], do you remember telling them in that interview that you met [Suspect #1] which [sic] you were 16 years old, not when you were 18 years old?

3

> A.    I might have said that, but I was actually 18.

4
5

> Q.    Okay. But my question is: Do you remember telling them that you were 16 years old when you met him?

6

> A.    See, like, he asked. I said no. Like, I don't remember saying that I was 16.

7    (*Id.* at 34:25-35:10.)

8          According to law enforcement notes and law enforcement reports of Ms. Reid's

9    August 23, 2017, interview, Ms. Reid provided a number of different statements about

10   when she first met and dated Suspect #1. According to one officer's notes, Ms. Reid

11   stated that she had met Suspect #1 when she was "18-19 yrs. old" in 1999-2000, but later

12   stated that she met him in 2001 and they dated from 2001 to 2006. (Reid Exhibits, Ex. 2

13   at 1-2.) Another officer's notes state that Ms. Reid claimed to have met Suspect #1 in

14   "2000-1999" at a time when she "was very young" and that they dated for three years.

15   (*Id.*, Ex. 3 at 1.) One officer's report of the August 23, 2017 interview states that Ms.

16   Reid met Suspect #1 when she was "about sixteen years old" and that they had started

17   dating in the year 1999 or 2000. (*Id.*, Ex. 4 at 1.) Notes from Ms. Reid's subsequent

18   August 25, 2017 interview uniformly reflect that Ms. Reid told officers that she did not

19   know Suspect #1 in 2001 and that she had not met him until 2003, when she was 18 years

20   old. (*Id.*, Ex. 5 at 1, Ex. 6 at 1.)

21   //

22   //

# III.   ANALYSIS

Ms. Reid brings three motions based on alleged misconduct that occurred in front of the grand jury:  (1) a motion to dismiss the indictment based on misconduct (*see* Mot. to Dismiss at 1-2); (2) a motion for a *Kastigar* hearing to determine whether any "independent evidence" supports the charges in the indictment (*see* Mot. for Hr'g at 1); and (3) a motion to compel production of grand jury materials that lead to Ms. Reid's indictment (*see* Mot. to Compel at 1-3).  The court considers each motion in turn.

## A.   Motion to Dismiss

Courts may dismiss grand jury indictments on either a finding of constitutional or due process error, or under the court's inherent supervisory power to supervise grand juries in the administration of justice.  *See United States v. Isgro*, 974 F.2d 1091, 1094 (9th Cir. 1992).  Dismissal of a grand jury indictment based on a claimed Fifth Amendment due process violation requires a showing of "outrageous government conduct," that is, conduct "that it is so grossly shocking and so outrageous as to violate the universal sense of justice."  *United States v. Restrepo*, 930 F.2d 705, 712 (9th Cir. 1991) (internal quotation marks and citations omitted).  This defense "is limited to extreme cases in which the government's conduct violates fundamental fairness."  *United States v. Gurolla*, 333 F.3d 944, 950 (9th Cir. 2003).  Similarly, a district court's dismissal of an indictment before trial based on the exercise of its supervisorial power "is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations."  *Bank of Nova Scotia v. United States*,

1    487 U.S. 250, 256 (1988) (quoting *United States v. Mechanik*, 475 U.S. 66, 77 (1986)

2    (O'Connor, J., concurring)); *see also United States v. Navarro*, 608 F.3d 529, 539 (9th

3    Cir. 2010) ("It is clear . . . that if a motion to dismiss is made before the verdict, the

4    district judge should apply the *Bank of Nova Scotia* standard . . . ."). Under either due

5    process or the exercise of a district court's supervisory power, "as a general matter, a

6    district court may not dismiss an indictment for errors in grand jury proceedings unless

7    such errors prejudiced the defendants." *Bank of Nova Scotia*, 487 U.S. at 254.

8          None of the arguments Ms. Reid advances establish grounds to dismiss the

9    indictment at this time. The court notes that it shares Ms. Reid's frustration with

10   Government counsel's description of Ms. Reid's immunity order. The Government quite

11   clearly instructed Ms. Reid that she could "no longer invoke your Fifth Amendment

12   privilege against self-incrimination as you have been compelled under this order to

13   incriminate yourself, to implicate yourself." (*See* Reid Exhibits, Ex. 9 at 7:23-8:1.) The

14   Government was wrong. Judge Martinez's order did not compel Ms. Reid to implicate or

15   incriminate herself; it stripped her of right to refuse to testify on the basis of her Fifth

16   Amendment privilege against self-incrimination and compelled her to testify before the

17   grand jury. (*See id.*, Ex. 1 at 2.) At best, the Government's explanation to Ms. Reid—a

18   lay witness without counsel present in the room—was careless. The court reprimands the

19   Government and advises Government counsel that it expects the Government to

20   accurately explain witnesses' rights and exercise greater care to avoid misleading

21   statements in future proceedings.

22   //

ORDER - 9

1    Although the court does not take the Government's mistaken description lightly,

2    the Government's error does not merit the "drastic step" of dismissing the indictment.

3    *United States v. Fuchs*, 218 F.3d 957, 964 (9th Cir. 2000) ("Dismissal of an indictment is

4    considered a drastic step and is generally disfavored as a remedy.") (internal quotations

5    and citations omitted).  Ms. Reid fails to articulate prejudice caused by this error with any

6    level of specificity.  (*See* Mot. to Dismiss at 11-15.)  Ms. Reid argues that the instruction

7    to "implicate" or "incriminate" herself caused confusion because she had also been

8    instructed to testify truthfully and she believed that she was innocent.  (*See id.*)  In other

9    words, she claims she could not comply with the Government's instructions to

10   "implicate" or "incriminate" herself and the instructions to testify truthfully.  (*See id.*)

11   However, Ms. Reid fails to explain how this confusion led to the allegedly perjured

12   testimony.  (*See id.*)  In fact, Ms. Reid does not offer any concrete examples of mistaken

13   or confused testimony that resulted from the Government's erroneous instructions.  (*See*

14   *id.*)

15       Ms. Reid also argues that the Government's misstatements biased the grand jury

16   because the grand jury expected Ms. Reid to confess to a crime.  (*See id.* at 13, 15.)  The

17   court rejects this argument on a number of grounds.  First, Ms. Reid ignores the specifics

18   of the crime the successor grand jury ultimately charged her for committing.  The crime

19   under investigation during Ms. Reid's grand jury testimony was a murder in which

20   Suspect #1 might have been involved.  (*See generally* Reid Exhibits, Ex. 9; Mot. to

21   Dismiss at 2.)  That grand jury was not investigating Ms. Reid, and Ms. Reid was not

22   charged with making false declarations and obstruction of justice for failing to implicate

1   herself in that murder.  (*See* Indictment at 1-3.)  Instead, a successor grand jury later

2   charged Ms. Reid for offering allegedly false testimony before the initial grand jury.  (*See*

3   *id.*)  Specifically, she was charged for denying making certain statements to law

4   enforcement on August 23, 2017.  (*See id.*)  Ms. Reid fails to explain what crime or

5   conduct the first grand jury would have expected her to "implicate" herself in or to draw

6   connections between the conduct she was charged with and the grand jury's allegedly

7   mistaken impressions.  (*See* Mot. to Dismiss at 11-15.)  Moreover, Ms. Reid fails to

8   distinguish between the grand jury that indicted her and the grand jury that heard her

9   testimony.  (*See id.* at 11-15.)  Even if she could show that the initial grand jury was

10  biased against her because of the Government's misstatements, she fails to show how

11  alleged bias by the grand jury to which she testified would have seeped into the minds of

12  the successor grand jury that ultimately indicted her.  (*See id.*)

13       In sum, although the court is thoroughly unimpressed with the carelessness

14  exhibited by the Government in this case, the court cannot dismiss the indictment against

15  Ms. Reid absent a showing of prejudice.  *Bank of Nova Scotia*, 487 U.S. at 254.

16  Accordingly, the court rejects Ms. Reid's argument that the Government's misstatements

17  serve as a basis to dismiss the indictment.

18       Ms. Reid's remaining arguments in favor of dismissal also fall short.  Ms. Reid's

19  testimony and the Government's questioning regarding the date in which she allegedly

20  met Suspect #1 shows no impropriety, let alone misconduct meriting a remedy as drastic

21  as dismissal.  Notes and reports from law enforcement agents appear to support the

22  Government's theory that Ms. Reid told law enforcement agents at one point that she

1    may have met Suspect #1 in 1999 or 2000, or around the time that she was 16 years old,

2    which would have been in 2001.  (*See* Reid Exhibits, Exs. 2-4.)  It was appropriate for the

3    Government to probe this topic while Ms. Reid was under oath in order to determine

4    whether Ms. Reid might have known Suspect #1 around the time of the murder at issue,

5    which occurred in 2001.  (*See* Mot. to Dismiss Resp. at 12.)

6          Moreover, even if this questioning was somehow improper, Ms. Reid fails to

7    adequately tie these questions to the charges against her.  Ms. Reid speculates that the

8    grand jury could have assumed that she lied about the date that she met Suspect #1 as a

9    result of the Government's examination, which would have made the grand jury more

10   likely to believe that she also lied when she gave the statements that resulted in the

11   charges against her.  (*See* Mot. to Dismiss at 16-19.)  But the court will not dismiss this

12   case based on speculation.  Further, Ms. Reid again fails to distinguish between the grand

13   jury that indicted her and the grand jury that heard her testimony or to explain how

14   assumptions allegedly made by the first grand jury would have impacted the second

15   grand jury that indicted her.  (*See id.*)

16         The court also rejects Ms. Reid's argument that the Government created a "perjury

17   trap" for Ms. Reid.  The Ninth Circuit has never recognized the "perjury trap" doctrine.

18   *United States v. Chen*, 933 F.2d 793, 797 (9th Cir. 1991).  But even if the doctrine

19   applied in this circuit, it is inapplicable to this case.  The Ninth Circuit has noted that the

20   perjury trap doctrine is "inapplicable" when the Government elicits testimony "before a

21   grand jury that is attempting to obtain useful information in furtherance of its

22   investigation" or when the grand jury is "conducting a legitimate investigation into

ORDER - 12

1    crimes which had in fact taken place within its jurisdiction." *Id.* (citations and internal

2    quotations omitted).  Here, Ms. Reid testified during a legitimate investigation into

3    Suspect #1 and a murder that allegedly occurred in this jurisdiction.  (*See generally* Reid

4    Exhibits, Ex. 9.)  Thus, the perjury trap doctrine is of no assistance to Ms. Reid.

5         Ms. Reid's final argument in favor of dismissal—that her case should be

6    dismissed based on the results of former National Security Advisor Michael Flynn's

7    criminal case (*see* Mot. to Dismiss at 20-22; Mot. to Dismiss Reply at 9)—perplexes the

8    court.  Ms. Reid's vague equal protection argument is woefully underdeveloped and not

9    supported by a single citation to legal authority.  (*See* Mot. to Dismiss at 20-22; Mot. to

10   Dismiss Reply at 9.)  The court fails to see any relevance that Mr. Flynn's prosecution

11   and the Government's recommendations or strategic decisions in that case have to Ms.

12   Reid's case.  Thus, the court rejects this argument and DENIES Ms. Reid's motion to

13   dismiss.

14   **B.    Motion for *Kastigar* Hearing**

15        In *Kastigar v. United States*, 406 U.S. 441 (1972), the Supreme Court concluded

16   that use and derivative use immunity under 18 U.S.C. § 6002—the kind of immunity that

17   that Ms. Reid enjoyed in this case—passed constitutional muster.  *See id.* at 462 ("We

18   conclude that the immunity provided by 18 U.S.C. § 6002 leaves the witness and the

19   prosecutorial authorities in substantially the same position as if the witness had claimed

20   the Fifth Amendment privilege.  The immunity therefore is coextensive with the privilege

21   and suffices to supplant it.").  The Court also held, however, that if a previously-

22   immunized witness is subject to a later criminal prosecution, the government bears "the

1    affirmative duty to prove that the evidence it proposes to use [in the criminal prosecution]

2    is derived from a legitimate source wholly independent of the compelled testimony." *Id.*

3    at 460.  In order to ensure that the government's evidence is not directly or indirectly

4    derived from the immunized (or compelled) testimony, a federal court can conduct a

5    "*Kastigar* hearing," at which the government must prove that there is an independent

6    source for its proof.  *See, e.g.*, *In re Grand Jury Subpoena*, 75 F.3d 446, 448 (9th Cir.

7    1996).

8           Ms. Reid moves for a *Kastigar* hearing in this case in order to "establish what, if

9    any, independent evidence might support the charges of the indictment."  (Mot. for Hr'g

10   at 1.)  Ms. Reid's motion misunderstands *Kastigar*, 18 U.S.C. § 6002, and the charges

11   brought against her.  Ms. Reid has been charged with making false declarations before

12   the grand jury and obstruction of justice based largely on the content of her prior grand

13   jury testimony.  (*See* Indictment at 1-3.)  The Government need not establish that the

14   evidence it proposes to use against Ms. Reid "is derived from a legitimate source wholly

15   independent of the compelled testimony," *Kastigar*, 406 U.S. at 460, because the

16   compelled testimony is the source of the charges against her.  As noted in 18 U.S.C.

17   § 6002, there is an exception to the prohibition on the use and derivative use of

18   immunized testimony, one that applies in "a prosecution for perjury, giving a false

19   statement, or otherwise failing to comply with the order."  18 U.S.C. § 6002.  The

20   Supreme Court and Ninth Circuit have held that neither the Fifth Amendment nor 18

21   U.S.C. § 6002 impose any limitation on the use of immunized testimony in a prosecution

22   for perjury or obstruction of justice.  *See United States v. Apfelbaum*, 445 U.S. 115, 131

1   (1980) ("[N]either the immunity statute nor the Fifth Amendment precludes the use of [a

2   witness's] immunized testimony at a subsequent prosecution for making false statements,

3   so long as that testimony conforms to otherwise applicable rules of evidence."); *see also*

4   *United States v. Thomas*, 612 F.3d 1107, 1127-28 (9th Cir. 2010) (holding that exceptions

5   in 18 U.S.C. § 6002 applied to obstruction of justice charge).  Accordingly, there is no

6   need for a *Kastigar* hearing in this case, and the court DENIES Ms. Reid's motion.

7   **C.      Motion to Compel**

8           Ms. Reid seeks disclosure of "all aspects of the grand jury proceedings, including

9   all witness testimony, leading to the indictment in this matter" pursuant to Federal Rule

10  of Criminal Procedure 6(e)(3)(E).  (*See* Mot. to Compel at 1, 3.)  That rule states:

11          The court may authorize disclosure – at a time, in a manner, and subject to
            any other conditions that it directs – of a grand-jury matter:

12
                    (i) preliminarily to or in connection with a judicial proceeding; [or]

13
                    (ii) at the request of a defendant who shows that a ground may exist
14                  to dismiss the indictment because of a matter that occurred before the
                    grand jury.

15
    Fed. R. Crim. P. 6(e)(3)(E)(i)-(ii).

16
            In order to obtain access to a grand jury matter under one of these subsections, a

17  party must demonstrate that the subsection applies and, in addition, show a

18  "particularized need" for the grand jury matter he or she seeks.  *Dennis v. United States*,

19  384 U.S. 855, 870 (1966).  "A trial judge should order disclosure of grand jury transcripts

20  only when the party seeking them has demonstrated that a 'particularized need exists . . .

21  which outweighs the policy of secrecy.'"  *United States v. Walczak*, 783 F.2d 852, 857

22

ORDER - 15

1    (9th Cir. 1986) (quoting *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400

2    (1959)).  In order to determine that there is a particularized need, a court must find "(1)

3    that the desired material will avoid a possible injustice, (2) that the need for disclosure is

4    greater than the need for continued secrecy, and (3) that only the relevant parts of the

5    transcripts should be disclosed." *United States v. Plummer*, 941 F.2d 799, 806 (9th Cir.

6    1991) (citing *Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211, 222

7    (1979)).  The burden of establishing this particularized need rests with the party seeking

8    disclosure.  *Douglas Oil Co.*, 441 U.S. at 223.

9        The court concludes that the exception in Rule 6(e)(3)(E)(ii) applies to this case

10   and that Ms. Reid has shown a particularized need for limited, *in camera* disclosure of

11   materials and minutes from the grand jury that indicted her.[2]  The court acknowledges

12   that "[m]ere unsubstantiated, speculative assertions of improprieties in the proceedings

13   do not supply the particular need required to outweigh the policy of grand jury secrecy."

14   *United States v. Ferreboeuf*, 632 F.2d 832, 835 (9th Cir. 1980); *United States v.*

15   *Claiborne*, 765 F.2d 784, 792 (9th Cir. 1985) ("Speculation cannot justify this court's

16   intervention into the grand jury's proceedings.").  At the same time, however, Ms. Reid

17   has identified a concrete example of misconduct on the Government's behalf—the

18   Government's misinterpretation of Ms. Reid's immunity order (*see* Reid Exhibits, Ex. 9

19   at 7:23-8:1).  As noted above, at present, Ms. Reid's motion to dismiss fails because she

20   lacks evidence to show that the Government's misconduct "substantially influenced the

21

22       [2] Because the court concludes that disclosure is warranted under Rule 6(e)(3)(E)(ii), the
     court need not consider whether disclosure is also warranted under Rule 6(e)(3)(E)(i).

1  grand jury's decision to indict," or to establish that there is "'grave doubt' that the

2  decision to indict was free from the substantial influence of such violations." *Bank of*

3  *Nova Scotia*, 487 U.S. at 256; *see also supra* § III.A.  If evidence showing prejudice

4  exists, the only way Ms. Reid will obtain it is if the court authorizes disclosure of the

5  grand jury materials.  Thus, the court concludes that there is a need for review of the

6  materials presented to the grand jury that indicted Ms. Reid to avoid the possible injustice

7  of allowing evidence of prejudice resulting from the Government's misconduct to slip

8  through the court's grasp.  *See Plummer*, 941 F.2d at 806.

9       The court also finds that the need to maintain grand jury secrecy does not weigh

10  heavily in this case.  The court recognizes that "the proper functioning of our grand jury

11  system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co.*, 441 U.S.

12  at 218 (citations omitted).  Grand jury secrecy promotes a number of purposes, including

13  protection of grand jury witnesses and protection of those who are "accused but

14  ultimately exonerated by the grand jury." *See id.*  Here, however, the indictment against

15  Ms. Reid is based on an extremely narrow set of facts—namely, Ms. Reid's statements to

16  law enforcement officers in three different interviews and her grand jury testimony.  (*See*

17  Indictment at 1-3.)  Thus, it is unlikely that there will be many relevant witnesses who

18  need the protection that grand jury secrecy provides.  Moreover, the grand jury has

19  already indicted Ms. Reid, meaning that she is no longer protected by grand jury secrecy,

20  and to the extent that there was any "investigation" into Ms. Reid's conduct, it has surely

21  been completed by now, which further reduces the need to maintain grand jury secrecy.

22  *See Douglas Oil Co.*, 441 U.S. at 222 (noting that need for grand jury secrecy is

1    "reduced" but "not eliminated" once "the grand jury has ended its activities").  Thus,

2    based on these narrow factual circumstances, the court concludes that that Ms. Reid's

3    need for accessing any relevant grand jury testimony outweighs the limited interest in

4    maintaining grand jury secrecy in this case.

5          The final factor articulated in *Plummer*—ensuring that disclosure is no broader

6    than necessary—gives the court pause.  Ms. Reid requests that the court order disclosure

7    of "all aspects of the grand jury proceedings, including all witness testimony, leading to

8    the indictment in this matter" (*see* Mot. to Compel at 1, 3), and the Government asks the

9    court to deny the motion outright without presenting a middle-ground option for partial

10   disclosure (*see* Mot. to Compel Resp. at 10-11).  At present, neither option satisfies the

11   court.  There are grounds to pierce the veil of grand jury secrecy in this case to ensure

12   that any prejudice caused by the Government's misstatements about the immunity order

13   comes to light.  Absent such disclosure, Ms. Reid will be unable to show that the

14   Government's misconduct "substantially impacted" the grand jury or creates "grave

15   doubt" that the grand jury's indictment was free from influence from the Government's

16   misconduct.  *Bank of Nova Scotia*, 487 U.S. at 256.  However, the court currently has the

17   same level of insight into the proceedings before the grand jury that indicted Ms. Reid

18   that Ms. Reid does—none.  Thus, although the court believes that the Government's error

19   gives rise to concerns, the court could only speculate as to whether there is any relevant

20   evidence that must be disclosed to Ms. Reid to avoid a "possible injustice."  *See*

21   *Plummer*, 941 F.2d at 806.  The court will not order the Government to turn over the

22   //

1   entire record of the grand jury proceedings at issue without knowledge of the content of

2   that record.

3          Accordingly, the court settles on a middle-ground remedy that both parties

4   indicated they would be amenable to during oral argument—*in camera* disclosure of all

5   minutes, testimony, instructions, or other materials presented to the grand jury that

6   indicted Ms. Reid.[3]  The court will review the materials submitted by the Government to

7   determine what, if any, materials must be disclosed to Ms. Reid in order to avoid a

8   "possible injustice" and will ensure that any disclosure the court ultimately authorizes is

9   limited to only the relevant portions of the grand jury record and subject to an appropriate

10   protective order.  *See Plummer*, 941 F.2d at 806.  Thus, the court GRANTS in part and

11   DENIES in part Ms. Reid's motion to compel.

12   **IV.   CONCLUSION**

13          For the reasons set forth above, the court DENIES Ms. Reid's motion to dismiss

14   (Dkt. # 52); DENIES Ms. Reid's motion for a *Kastigar* hearing (Dkt. # 56); and

15   GRANTS in part and DENIES in part Ms. Reid's motion to compel (Dkt. # 55).  The

16   court ORDERS the Government to produce a hard copy of all minutes, testimony,

17   //

18

19          [3] To the extent that Ms. Reid seeks production of additional material presented to the first

20   grand jury that Ms. Reid testified before regarding Suspect #1, the court rejects that request as overbroad.  The Government has already produced Ms. Reid's own testimony from those grand jury proceedings.  (*See* Reid Exhibits, Ex. 9.)  Any additional material from those grand jury

21   proceedings that was relevant to Ms. Reid's indictment would likely have been presented to the grand jury that indicted Ms. Reid and, as such, will be produced for *in camera* review under the

22   court's order.

1    instructions, or other materials presented to the grand jury that indicted Ms. Reid to the

2    court for *in camera* review within seven days of the filing date of this order.

3           Dated this 6th day of August, 2020.

4

5

6                                              JAMES L. ROBART
                                               United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 20