Honorable James Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON, SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | No. CR19-117 JLR |
| Plaintiff, ) | |
| ) | DEFENSE REPLY TO GOVERNMENT |
| v. ) | RESPONSE RE: SUBPOENA OF DOJ |
| ) | EMPLOYEES |
| SHAWNA REID, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

The government's reply offers no compelling reason to exempt the two prosecutors who were percipient witnesses to (and active participants in) the very activity at the heart of Shawna Reid's criminal charges. To understand the full circumstances under which Ms. Reid testified and her state of mind at the time, the key players in the drama — the prosecutors who elicited her testimony — should be presented in the flesh, not as anonymous, disembodied figures in a transcript.

The government offers a sanitized account of events, focusing on Ms. Reid's answers to two questions cherry-picked from a much larger body of testimony,

Michael Nance
Attorney at Law
P.O. Box 11276
Bainbridge Island, WA 98110
(206) 624-3211

1

effectively depriving it of meaningful context.[1]

This case is about much more than Ms. Reid's simple responses to two questions. Ms. Reid gave three interviews, two of them denying or qualifying what investigators insisted she had told them in the first interview. After receiving immunity she was compelled by court order to appear and answer questions before the grand jury. Appearing alone before that body she perceived anger and hostility from her questioners, especially after professing ignorance about being granted immunity. She consulted very briefly with her newly appointed attorney before returning to the grand jury room. She was then misadvised, by Mr. Wheatley, in the presence of the grand jury, on the obligation to incriminate herself, to confess to a crime.

Ms. Reid was badgered about when she first met suspect #1 and confronted with a prior statement memorialized in agents' reports she had never seen that purported to contradict her testimony about her age at the time, but which, in fact,

---

[1] The alleged perjury arises from this exchange before the grand jury:

Q. In your first interview, did you say to the FBI that [suspect #1] bragged to you about his involvement in the murder of a "judge or an attorney that lives on a hill"?

A. No.

Q. In your first interview, did you say to the FBI that [suspect #1] bragged the murder victim was someone of importance like a judge or an attorney general?

A. No. GJ 17.

bolstered it.  She was asked repeatedly about whether suspect #1 had confessed to her about a role in Tom Wales' murder and about whether she had previously said that he had.  Her answers were largely equivocal, probably reflecting her imperfect memory and emotional state:  she did not recall but allowed that she might have said so accidentally without meaning to, or from confusion or intimidation from the detectives, and that she had "apparently" said yes in her first interview but "didn't mean it."  GJ 16-20, 38-40.

Her actual testimony is reflected in the transcript, but it does not portray the hostile, coercive atmosphere she perceived and confusion she suffered.  While Mr. Wheatley (and Mr. Jaffe) are unlikely to admit to anger, hostility or an overbearing nature, the jury should observe them while hearing their testimony and judge for itself.

The government's other objections do not overcome the presumption of necessity of a witness for an adequate defense.  It cites *United States v Sims,* 637 F. 2d 625 (9th Cir. 1980), which actually supports the defense position since Ms. Reid's perception of hostility and coercion are highly relevant and non-frivolous.[2]  It expresses concern that having government prosecutors testify at trial "would confuse the issues, mislead the jury, and needlessly present cumulative evidence".

---

[2] [If the accused avers facts which, if true, would be relevant to any issue the case, the requests for subpoenas must be granted unless [they] are inherently incredible on their face . . . or the request is otherwise frivolous.  *Sims*, 637 F.2d at 627.

GB 6. This ignores the irony that the actions of the prosecutors before the grand jury created actual confusion for both the grand jurors and Ms. Reid, the compelled witness. Any possible confusion at trial would be attenuated by the oversight of the trial judge, cautionary or limiting instructions, and the ability of the government to be its own advocate, all aspects Ms. Reid lacked in dealing with her confusion during her grand jury appearance.

The government suggests that alternatives to these prosecutor witnesses have not been exhausted. GB 10-12. But no one is more appropriate than these two prosecutors. The stenographer, focused on transcript precision — not on intrigue or witness demeanor and probably not even observing the witness — is not appropriate. Grand jurors, themselves, whose very identities are a closely guarded government secret, and who are personally sworn to secrecy, are likewise highly inappropriate.

The government asserts that the transcript of Ms. Reid's testimony reflects straightforward questioning and a lack of obvious intimidation or ambiguity and "answers that were clear and concise" and could not have been misinterpreted. GB 8. The transcript does not reflect that.

As noted above, it reflects Ms. Reid's attempt to explain her hazy memory of events informed by what she had since been told by investigators about her earlier statements. The specific answers for which she was indicted were framed on either

side by answers to very similar questions that are equivocal and ambiguous. The indicted answers (the "no" to the two questions in the indictment) were in response to whether she had previously told investigators that suspect #1 had *bragged* to her about his involvement in the murder and whether he had *bragged* that the victim was a "person of importance like a judge or attorney general". Was her "no" in response to whether she had told investigators that suspect #1 told her of his involvement in the murder or whether she told them he had *bragged* about it? Were the questions premised on her own purported statements to investigators that suspect #1 had bragged about his involvement or the investigators' characterization of what she supposedly said? One cannot tell from the transcript.

The questions were inherently ambiguous, and the answers they elicited could have been interpreted in more than one way. Ms. Reid could have been denying that she said he told her he was involved or she could have been denying that he did so in a bragging way.³ The ambiguity should be construed against the party that created it and that failed to clarify answers that were a product of that ambiguity.

Mr. Wheatley and Mr. Jaffe are necessary defense witnesses who should be

---

³ The government recognizes its burden but wrongfully assumes it is easily met. GB 2. It must prove the central question, "that the defendant understood the question[s] as did the government and that, so understood, the defendant's answer was false". *United States v. Matthews*, 589 F.2d 442, 445 (9th Cir. 1978). To commit perjury, a defendant must know the statement is false and not the product of confusion, mistake, or faulty memory. *United States v. Dunnigan*, 507 U.S. 87, 94 (1993).

compelled to appear and testify on Ms. Reid's behalf.

Respectfully submitted this 9th day of December, 2020.

/s/  Michael Nance, WSBA  #13933
/s/ Robert Gombiner, WSBA  #16059
Attorneys for defendant Shawna Reid

**Certificate of service**

I hereby certify that on the 9th day of December, 2020, I electronically filed the foregoing with the clerk of the court using the CM/ECF system.  Notice of this filing will be sent electronically to counsel for other parties of record.

/s/ Michael Nance