District Court Judge James L. Robart

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA | NO. CR 19-117-JLR |
| v. | GOVERNMENT'S TRIAL BRIEF |
| SHAWNA REID, | |
| Defendant. | |

The United States of America, by and through its counsel of record, Nicholas L. McQuaid, Acting Assistant Attorney General, United States Department of Justice, and Matthew Hoff and Christina Taylor, Department of Justice Trial Attorneys, hereby submits to the Court the Government's Trial Brief for the jury trial in above-entitled matter, scheduled to begin on July 13, 2021, before this Court.

## I. INTRODUCTION

Defendant Shawna Reid is charged in a two-count Indictment with False Declarations before the Grand Jury (Count One), in violation of 18 U.S.C. § 1623; and Obstruction of Justice (Count Two), in violation of 18 U.S.C. § 1503. The allegations stem from the Defendant's denials during her testimony before the Grand Jury on February 28, 2018, regarding statements she made to investigators during her August 23, 2017 interview about Suspect #1's involvement in a murder as well as the Defendant's conflicting and changing statements to investigators about her knowledge of Suspect #1's involvement in a murder.

Government' Trial Brief
*United States* v. *Reid*, No. CR19-117JLR – 1

ASSISTANT ATTORNEY GENERAL
1301 NEW YORK AVENUE, NW
SUITE 700
WASHINGTON, D.C. 20005
(202) 514-3594

## II. TRIAL MATTERS

### A. Estimated Length of Trial

The Government anticipates that its case-in-chief will last approximately one to two days.

### B. Government Witnesses

The Government intends to call three to four witnesses to testify during its case-in-chief, a Federal Bureau of Investigation (FBI) Special Agent, a former FBI special agent, a former Seattle Police Department (SPD) Detective, and, potentially, a witness to present the Defendant's Grand Jury testimony.

### C. Government Exhibits

The Government has filed a proposed exhibit list in a separate filing. The Government anticipates the admission of the transcript of the Defendant's Grand Jury testimony and, potentially, the notes of the investigators taken during the Defendant's interviews with the investigators.

### D. Stipulations

The parties have agreed, without objection, to the admission of the Defendant's Grand Jury transcript in its entirety. The Government anticipates presenting the Grand Jury transcript to the jury through a witness called for the sole purpose of reading the transcript. To do so, the Government seeks to ask the questions asked during the Grand Jury proceeding, with the witness responding with the Defendant's answers. While the parties agree to the admission of the Defendant's Grand Jury transcript, the defense has informed the Government that they object to the reading of the transcript through a witness. The defense has also advised that they would object to any redactions of the Grand Jury transcript to include redacting Suspect #1's name. The issue regarding the use of Suspect #1's name is discussed in more detail below. There are no other stipulations at this time.

### E. Jury Selection

Government' Trial Brief
*United States* v. *Reid*, No. CR19-117JLR – 2

ASSISTANT ATTORNEY GENERAL
1301 NEW YORK AVENUE, NW
SUITE 700
WASHINGTON, D.C. 20005
(202) 514-3594

As stated at the pre-trial conference held on June 14, 2021, the Government does not object to conducting voir dire and jury selection via remote hearing. However, it is the Government's understanding that the defense objects to holding jury selection via video and wishes to hold jury selection solely in-person. The Government consents to either process for jury selection.

### III.   FACTUAL BACKGROUND

The Government will seek to introduce the following evidence at trial.

On three separate occasions in 2017, FBI and the SPD interviewed the Defendant about her prior association with an individual identified in the Indictment as Suspect #1. These interviews were documented in investigators' notes and written reports. On August 23, 2017, former SPD Detective Thomas Conrad and FBI Special Agent Josh Anderson went to the Defendant's home to interview her about her association with Suspect #1. When investigators arrived, the Defendant was on the phone with her mother. The investigators asked if they could come in and speak with her about Suspect #1. The Defendant invited them in and asked if her mother could stay on the phone and listen to the interview. Detective Conrad agreed that the Defendant's mother could listen to the interview as long as there were no interruptions and the mother did not impede the interview. However, over the course of the interview, the Defendant's mother continued to interrupt and ask for questions to be repeated. Therefore, the investigators asked the Defendant to hang up with her mother so the interview could continue.

During the August 23, 2017 interview, the investigators asked the Defendant about her relationship with Suspect #1. The Defendant told investigators that she and Suspect #1 were in a prior relationship. The investigators later asked if Suspect #1 ever told her about Suspect #1's involvement in a murder. The Defendant replied "yes" and then told the investigators, unprompted, that Suspect #1 bragged to her about his involvement in the murder of a "judge or an attorney that lives on top of a hill." However, according to the Defendant, Suspect #1 never informed her about the specifics of Suspect #1's involvement

Government' Trial Brief
*United States* v. *Reid*, No. CR19-117JLR – 3

ASSISTANT ATTORNEY GENERAL
1301 NEW YORK AVENUE, NW
SUITE 700
WASHINGTON, D.C. 20005
(202) 514-3594

in the murder. Three separate times during the Defendant's initial interview with law enforcement, she reiterated that the victim of the murder was a judge, or an attorney, or an attorney general. The Defendant told investigators that she believed Suspect #1 was simply bragging about the murder to look tough; therefore, she never took the information seriously. During the interview, the Defendant told investigators that she recalled Suspect #1 driving her by the house where the murder occurred, and she remembered the house was on a hill. Again, the Defendant then told the investigators that Suspect #1 told her that the man who was killed was an "attorney general or a judge." Also during the interview, the Defendant told the investigators about other crimes that she knew or believed Suspect #1 committed, separate from the murder. The interview ended when the Defendant told the investigators that she had to leave to attend a sibling's court appearance. The interview was not recorded and at the end of interview the parties arranged to meet again on August 25, 2017. At no point during the interview did the investigators tell the Defendant details about the murder they were investigating or the identity of the murder victim.

During the subsequent interview on August 25, 2017, the Defendant immediately denied that she told the investigators two days earlier about Suspect #1's involvement in the murder. On that date, the Defendant told the investigators that what she actually told investigators during the August 23, 2017 interview was that Suspect #1 drove her by a house on a hill and said that he had family or a former employer that lived in the house, and that, in fact, that family member or former employer was a judge, an attorney, or an attorney general. When the investigators asked the Defendant if she remembered their previous conversation regarding the murder, she repeatedly denied making the statements about Suspect #1's involvement in the murder. The Defendant admitted that after the August 23, 2017 interview, she conducted research online and learned about the identity of the murder victim. At the end of the interview, the investigators served the Defendant with a Grand Jury subpoena and advised her about the consequences of lying before a Grand Jury.

Government' Trial Brief
*United States* v. *Reid*, No. CR19-117JLR – 4

ASSISTANT ATTORNEY GENERAL
1301 NEW YORK AVENUE, NW
SUITE 700
WASHINGTON, D.C. 20005
(202) 514-3594

On December 7, 2017, a FBI Special Agent, along with a federal prosecutor, interviewed the Defendant a third time at the Federal Courthouse in Seattle. The Defendant was scheduled to appear before the Grand Jury that day pursuant to the subpoena provided to her on August 25, 2017. During this interview, the Defendant admitted that she did, in fact, respond in the affirmative when the investigators asked her if Suspect #1 ever spoke to her about his involvement in a murder. However, on this date, the Defendant said she later realized that she misspoke or was confused about the question, and believed she was responding to a different question from the investigators but could not explain what that other question was. Further, the Defendant could not provide an explanation as to why she would have provided the investigators with information about a "judge or an attorney" who "lives on top of a hill." Recognizing the conflicting statements made by the Defendant on three separate occasions, the federal prosecutor advised the Defendant that she may want to seek the advice of counsel before appearing before the Grand Jury. Therefore, the interview ended and the Defendant did not appear before the Grand Jury on December 7, 2017.

On February 28, 2018, the Defendant again appeared at the Seattle Federal Courthouse to testify before a Federal Grand Jury about her prior statements to the investigators regarding Suspect #1's involvement in the murder of "a judge or an attorney." Specifically, the Defendant was asked about the information provided to her by Suspect #1 about Suspect #1's involvement in the murder of a judge or lawyer who "lives on top of a hill." During the Defendant's testimony, she affirmatively denied that Suspect #1 told her about any involvement in the murder of a judge, prosecutor, or attorney general who lived on a hill and denied that Suspect #1 drove her by the house where the murder occurred. Additionally, when asked, the Defendant denied telling investigators during her first interview on August 23, 2017 that Suspect #1 bragged about being involved in the murder of a judge or attorney who lived on a hill. The Defendant also specifically denied telling investigators during her first interview that Suspect #1 bragged that the murder victim was

Government' Trial Brief
*United States* v. *Reid*, No. CR19-117JLR – 5

ASSISTANT ATTORNEY GENERAL
1301 NEW YORK AVENUE, NW
SUITE 700
WASHINGTON, D.C. 20005
(202) 514-3594

someone of importance like a judge or an attorney general.  Defendant ultimately conceded that she told investigators during her August 23, 2017 interview that Suspect #1 told her he had been involved in a murder of a judge or attorney who lived on a hill. The Defendant also conceded that during this interview she stated Suspect #1 drove her past the house where the murder occurred. However, the Defendant claimed she was mistaken in telling the investigators this information and Suspect #1 never told her he was involved in a murder nor had he driven her by a house where such a murder occurred.

## IV.  APPLICABLE LAW – ELEMENTS AND DEFINITIONS

In order to convict the Defendant of False Declarations before the Grand Jury (Count One), in violation 18 U.S.C. § 1623, the Government must prove that (1) the Defendant testified under oath in or ancillary to any grand jury proceedings; (2) the testimony was false; (3) the Defendant knew the testimony was false; and (4) the false testimony was material to the matters before the grand jury; that is, it had a natural tendency to influence, or was capable of influencing, the grand jury's investigations.  *See* Ninth Circuit Model Jury Instruction – 8.137 (2010 Edition – Approved 6/2017); *see also United States v. Matthews*, 589 F.2d 442, 445 (9th Cir. 1978) (the government must prove the central question "that the defendant understood the question[s] as did the government and that, so understood, the defendant's answer was false");  *United States v. Dunnigan*, 507 U.S. 87, 94 (1993) (when committing perjury, a defendant must know the statement is false and not the product of confusion, mistake, or faulty memory).  However, as to the fourth element, the false statement need not actually have impeded the grand jury's investigation. *See Vitello v. United States*, 425 F.2d 416, 424 (9th Cir. 1970).

In order to convict the Defendant of Obstruction of Justice (Count Two), in violation of 18 U.S.C. § 1503, the Government must prove that (1) the Defendant influenced, obstructed, or impeded, or tried to influence, obstruct, or impede the due administration of justice; and (2) the Defendant acted corruptly with the intent to obstruct justice. *See* Ninth Circuit Model Jury Instruction – 8.131 (2010 Edition – Approved 3/2017).  However, the

Government' Trial Brief
*United States* v. *Reid*, No. CR19-117JLR – 6

ASSISTANT ATTORNEY GENERAL
1301 NEW YORK AVENUE, NW
SUITE 700
WASHINGTON, D.C. 20005
(202) 514-3594

Government need not prove that the Defendant's sole or even primary intention was to obstruct justice so long as the Government proves beyond a reasonable doubt that one of the Defendant's intentions was to obstruct justice. The Defendant's intention to obstruct justice must be substantial. *Id.*; *see also United States v. Smith*, 831 F.3d 1207, 1218 (9th Cir. 2016). A defendant acts "corruptly" when s/he commit an act and that act is "done with the purpose of obstructing justice." *United States v. Rasheed*, 663 F.2d 843, 852 (9th Cir. 1981).

## V. LEGAL AND EVIDENTIARY ISSUES

### A. Waiver of Attorney-Client Privilege

At the pre-trial conference on June 14, 2021, the Defendant stated that she may potentially call the Defendant's former counsel, Kevin Peck, during the defense case-in-chief. "The attorney-client privilege is an evidentiary rule designed to prevent the forced disclosure in a judicial proceeding of certain confidential communications between a client and a lawyer." *United States v. Rogers*, 751 F.2d 1074, 1077 (9th Cir. 1985). Certainly, as former counsel for the Defendant, the attorney-client privilege applies to their communications and conversations and the attorney-client privilege does not end when an attorney's representation of a client ends. *See Swindler & Berlin v. U.S.,* 524 U.S. 399 (1998) (finding that the attorney-client privilege survives death). "Voluntary disclosure of a privileged attorney communication constitutes waiver." *Clady v. County of Los Angeles*, 770 F.2d 1421, 1434 (9th Cir. 1985). Similarly, "[w]here a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived." *Chevron Corp*. v. Pennzoil Co., 974 F.2d 1156, 1162 (9th Cir. 1992). Further, disclosure of communications about a matter waives attorney-client privilege "on all other communications on the same subject." *United States v. Plache*, 913 F.2d 1375, 1380 (9th Cir. 1990) (citing *Weil v. Investment/Indicators, Research & Management, Inc.*, 647 F.2d 18, 25 (9th Cir. 1981)). By calling her former attorney to the witness stand to testify about prior legal advice, the Defendant waives the attorney-client privilege to any

Government' Trial Brief
*United States* v. *Reid*, No. CR19-117JLR – 7

ASSISTANT ATTORNEY GENERAL
1301 NEW YORK AVENUE, NW
SUITE 700
WASHINGTON, D.C. 20005
(202) 514-3594

communications about which the attorney testifies. *See Handgards, Inc., v. Johnson & Johnson*, 413 F.Supp. 926, 929 (N.D. Cal. 1976); *see also International Tel. & Tel. Corp. v. United Tel. Co. of Fla.,* 60 F.R.D. 177, 185-86 (M.D.Fla.1973) ("If the client or his attorney at his instance takes the stand and testifies to privileged communications in part this is a waiver as to the remainder … about the same subject").  Thus, the Government should be allowed to cross-examine former defense counsel about any relevant communications with the Defendant on subjects about which he testifies.

B.  Right Against Self-Incrimination

At the pre-trial conference, the Defendant also informed the Court that she may call the Defendant's mother, Stacey Richardson, as a witness during the Defendant's case-in-chief.  Without knowing the extent of Ms. Richardson's testimony, the Government is aware that Ms. Richardson listened to a portion of the interview with the Defendant on August 23, 2017 over the phone.  The Government subsequently learned that Ms. Richardson recorded a portion of the interview and attempted to obtain a copy of the recording pursuant to a Grand Jury subpoena; however, Ms. Richardson informed the investigators that she deleted the recording.  At no point during the August 23, 2017 interview did the FBI Special Agent or the SPD Detective give Ms. Richardson permission to record the interview, and Ms. Richardson never informed the parties that she was recording the interview.  Pursuant to Wash. Rev. Code § 9.73.030(1), it is unlawful for "any individual…to intercept, or record any…private conversation…without first obtaining the consent of all the persons engaged in the conversation."  The Fifth Amendment privilege against self-incrimination provides that, "No person shall be…compelled in any criminal case to be a witness against himself."  "The Sixth Amendment right of an accused to compulsory process to secure the attendance of a witness does not include the right to compel the witness to waive his Fifth Amendment privilege."  *United States v. Trejo-Zambrano*, 582 F.2d 460, 464 (9th Cir. 1978).  Here, while the Government cannot charge Ms. Richardson with a violation of federal criminal

Government' Trial Brief
*United States* v. *Reid*, No. CR19-117JLR – 8

ASSISTANT ATTORNEY GENERAL
1301 NEW YORK AVENUE, NW
SUITE 700
WASHINGTON, D.C. 20005
(202) 514-3594

law, she potentially has criminal liability in the State of Washington for her alleged unlawful recording of the Defendant's first interview with investigators. Thus, before Ms. Richardson testifies, she should be advised of her Fifth Amendment right against self-incrimination and be provided the opportunity to invoke her Fifth Amendment privilege before testifying.

### C. Identification of Suspect #1

In the Court's Order on Motion to Dismiss, Motion for Kastigar Hearing, and Motion to Compel Discovery (Docket # 69), the Court instructed defense counsel "…to use the name 'Suspect #1' to describe the individual at issue in all future proceedings to protect the secrecy of the grand jury proceedings." *Id.* at 2 n.1. Defense counsel has informed the Government that during trial, they object to referring to Suspect #1 by any other term than Suspect #1's actual name. Further, as stated above, the defense objects to the redaction of Suspect #1's name from any documents.

### D. Opposing Party's Statement

A statement is hearsay if it is (1) an assertion that (2) is made out of court and (3) is offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). However, statements made by the opposing party being offered into evidence against that party are considered non-hearsay under Fed. R. Evid. 801(d)(2). The Government intends to offer statements made by Reid against her at trial. As discussed above, these statements are admissible as non-hearsay statements against the opposing party. While the Government may introduce statements made by Reid, the defense may not seek to introduce Reid's statements through other witnesses as Rule 801 makes it clear that the statement must be "…offered against the opposing party." Fed. R. Evid. 801(d)(2).

## VI. RECIPROCAL DISCOVERY

The Government has continued to provide discovery to the Defendant on a rolling basis including documents, law enforcement reports, and transcripts. During the Government's initial discovery disclosure on August 23, 2019, the Government requested

Government' Trial Brief
*United States* v. *Reid*, No. CR19-117JLR – 9

ASSISTANT ATTORNEY GENERAL
1301 NEW YORK AVENUE, NW
SUITE 700
WASHINGTON, D.C. 20005
(202) 514-3594

discovery from the Defendant pursuant to Fed. R. Crim. Pro. 16(b)(1). To date, the Government has not received any reciprocal discovery from the defense and will seek to exclude any offered during the course of trial that should have been provided previously, pursuant to Rule 16(d)(2) of the Federal Rules of Criminal Procedure.

DATED this 29th day of June 2021.

                              Respectfully submitted,

                              Nicholas L. McQuaid
                              Acting Assistant Attorney General

                              *s/Matthew K. Hoff*
                              MATTHEW K. HOFF
                              Trial Attorney

                              CHRISTINA TAYLOR
                              Trial Attorney

Government' Trial Brief
*United States* v. *Reid*, No. CR19-117JLR – 10

ASSISTANT ATTORNEY GENERAL
1301 NEW YORK AVENUE, NW
SUITE 700
WASHINGTON, D.C. 20005
(202) 514-3594

CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorney(s) of record for the Defendant(s).

/s/ Christina Taylor
CHRISTINA TAYLOR
Trial Attorney
Organized Crime and Gang Section
U.S. Department of Justice
1301 New York Avenue, NW
Suite 700
Washington, D.C. 20005
Tel.: (202) 679-1034

Government' Trial Brief
*United States* v. *Reid*, No. CR19-117JLR – 11

ASSISTANT ATTORNEY GENERAL
1301 NEW YORK AVENUE, NW
SUITE 700
WASHINGTON, D.C. 20005
(202) 514-3594