Honorable James Robart

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON, SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR19-117 JLR |
| | ) | |
| Plaintiff, | ) | DEFENSE MOTION TO |
| | ) | DISMISS FOR DISCOVERY |
| v. | ) | AND *BRADY* VIOLATION |
| | ) | |
| SHAWNA REID, | ) | |
| Defendant. | ). | **Oral argument requested** |
| _____ | ) | Noted: July 9 , 2020 |

## Motion

The government has egregiously breached its discovery obligations and severely prejudiced the defendant by failing to reveal until yesterday that an audio recording of Shawna Reid's grand jury testimony exists. Ms. Reid moves that the case be dismissed with prejudice.

## Facts

Ms. Reid's sole grand jury appearance occurred on February 28, 2018. She was indicted for statements made during that testimony on June 20, 2019, and arraigned on August 20, 2019, when she requested full discovery under the local rule. Dkt. # 9.

Michael Nance
Attorney at Law
P.O. Box 11276
Bainbridge Island , WA 98110
(206) 624-3211

**Defense Requests For Recorded Statements of Ms. Reid**

On October 18, 2019, counsel for Ms. Reid sent the government a

discoveryletter.  Redacted version in Exhibit 1.  The letter specifically asked for:

> "[a]ny written or recorded statements … made by Ms. Reid to any
> person, whether a government investigator/official or not, relating
> tothe Thomas Wales matter, including any statement(s) Ms. Reid
> maderegarding [suspect #1]. This request includes, but is not
> limited to, any statement the government might potentially use in
> its case-in- chief."

Exhibit 1, paragraph 3.  The defense also requested any information about how

the grand jury that indicted Ms. Reid was informed of her earlier grand jury

testimony and whether the testimony was play-acted or the transcript read into

the record.  Exhibit 1, paragraph 13.  Rule 16, specifically referenced at the

beginning of the discovery letter, requires that the government must provide to

the defense any recording of a defendant's testimony before a grand jury if it

relates to the case.  FRCrP16 (a)(1)(B)(iii).

Shortly after Mr. Reid's arraignment, the government furnished the

defensewith a transcript of Ms. Reid's grand jury testimony.   The front page of

the transcript provided to the defense includes the notation "Proceedings

recorded bymechanical stenography".  Exhibit 2.  Nowhere in the transcript is

any indication that the proceedings were audio recorded.

The government has continually represented to the defense that it has complied with all of its discovery obligations.  On January 28, 2020, in response tothe defense discovery letter of October 18, 2019, the government specifically assured the defense both that it had given the defense Ms. Reid's statements and that if it learned of any other statements to other persons that were discoverable under *Brady* or Rule 16(a) it would "promptly" furnish them to the defense. Exhibit 3.

Following this letter, no audio recording of the grand jury proceedings was ever received by the defense. At no time until July 1, 2021, has the government ever so much as hinted that any audio recording existed or even might exist.

**Defense Motions**

As the case progressed, the defense came to believe it was critical for the jury to understand the full dynamics of Ms. Reid's appearance before the grand jury, including her interactions with the prosecutors, and her demeanor and that of the prosecutors. Because the only evidence we possessed was the cold transcript, we moved  to subpoena two of the prosecutors present at the hearing to flesh out the record and to more fully develop the actual circumstances and atmosphere of Ms. Reid's grand jury testimony.

The government vigorously opposed this motion and chastised the defense for not exhausting other avenues, such as seeking to use as witnesses the grand jury foreman or the stenographer.  Gov't Response,  Dkt. # 80 at 10-12.

The government also confidently asserted that the transcript showed that allof Ms. Reid's answers were "clear and concise",  that the transcript demonstrated no evidence of intimidation and "That nothing in the grand jury transcripts shows the defendant did not understand the questions or struggled as to what they meant."Gov't Response to Motion at 8.

The court convened a hearing on January 28, 2021, to consider the motion to subpoena the prosecutors. The defense and the Court understood that the only evidence of the grand jury proceeding was the written transcript and that it was in that context that the motion had to be decided. As the court noted at one point, "Every case I have found, says basically, that if there is a transcript the transcript isthe best evidence."  T 8.   At the time the Court made this observation,  it was, of course, unaware that the real best evidence — the audio recording — existed but had not been revealed by the government. The Court ultimately granted the defense motion to subpoena the prosecutors.

At the pretrial conference on June 14, 2021, there was extensive discussion about the prosecutor witnesses and how they would appear but not a word about any audio recording of the grand jury.

MICHAEL NANCE
ATTORNEY AT LAW
P.O. BOX 11276
BAINBRIDGE ISLAND , WA 98110
(206) 624-3211

**Defense Emails Requesting that the Government Ensure
that No Recording Existed**

As the defense trial preparations entered its final stage, we became even more conscious of the critical relevance of the tone and tenor of Ms. Reid's performance before the grand jury:  not only what she said in her testimony but how she said it and the manner and tone in which the questions were asked and in her answers.   A cold transcript did not reflect the full story.  To rule out even the most remote possibility (since we already been assured almost eighteen months earlier that all Rule 16 discovery had been produced), we sought to confirm that no recording existed.  On June 21, 2021, we asked for this confirmation by email. When, after a week had passed without a response, we sent a second one.    On July 1 — yesterday, just days before trial — the government responded that an audio recording *does* exist, that it "was requesting it and would send us a copy when the recording was received."   On today's date, at about 9:00 a.m., we received an email from the government telling us that the recording "will be ready for production on Wednesday, July 7",  that the government would get a copy of it at "around 8:30 a.m. and then will figure out the best quickest way to send [the defense] a copy."  See exchange of emails in Exhibit 4.

# ARGUMENT

**Too little, too late**

The government's shockingly dismissive attitude, ineptitude and recklessness toward its basic discovery obligation to provide key evidence mandated by the rules — indeed, evidence that lies at the heart of the case — has created an untenable situation that merits dismissal.

The government's cryptic and belated admission that a recording *does* exist fails to explain how the recording was generated or why it is only now being revealed. Nothing obscures the reality that the government is 100% in control of the reporting of grand jury proceedings, 100% in control of everything that happens within the grand jury room, and 100% responsible for not complying with FRCrP 16.

A recording is the "best evidence" of what a witness or a defendant said.

See FRE 1002; *United States v. Chavez*, 976 F.3d 1178 (10th Cir. 2020) (explaining the best evidence rule at length and reversing a conviction because only English translations of Spanish language recordings were admitted and not the recordings themselves). Ninth Circuit law makes clear that a transcript is only an aid to understanding an audio recording and not a replacement for it. *United States v. Workinger,* 90 F.3d 1409 (9th Cir. 1996). And, of course, the Federal Rules of

Michael Nance
Attorney at Law
P.O. Box 11276
Bainbridge Island , WA 98110
(206) 624-3211

Criminal Procedure unambiguously and expressly require that any recording of a defendant's testimony before a grand jury that relates to the case be provided to the defense.

In blatant violation of its obligations under these rules the government failed to provide the defense with the best evidence of the most important evidence in the case, despite an early request that it do so.   The effect of the violation is deeply prejudicial both retroactively and prospectively.

**Prejudice that has Already Occurred**

The defense motions and the Court's rulings presume that the only evidence of what happened during Ms. Reid's grand jury is the transcript.  We now know this to be false.  The new evidence casts into doubt the basis for the Court's ruling on the defense motion to dismiss.  The defense argued a very important motion and the Court denied it with both the defense and the Court operating without being in possession of crucial information.

The Court denied Ms. Reid's motion to dismiss due to the government's false statement to her about the compulsion order's requirements, largely on the ground that Ms. Reid could not show she was confused or mistaken.  Dkt. #69 at 10.   An audio recording of her testimony may well have manifested the very confusion or mistake the court found lacking in the transcript.  Obviously, the

identical words on a page can take on very different meanings depending on how those words are actually said. Confusion and mistake may well reveal themselves in the delivery and presentation of a witness, as captured in an audio recording. By its very nature, a transcript cannot capture the full meaning of what a witness says. A transcript is an aid to understanding a recording and not a substitute for the recording. If the case is not dismissed on the grounds advanced in the present motion, the court should, in light of the new evidence, revisit the issues raised in the original defense motion to dismiss.

The defense also has repeatedly sought, both by discovery letter and by motion, to ascertain the circumstances under which the indicting grand jury considered Ms. Reid's prior testimony. After an *in camera* review of material provided it by the government the court denied our motion. Dkt. #73. But, the court conducted its review of the grand jury testimony unaware that the indicting grand jury apparently did not hear the best evidence — the actual recording of Ms. Reid's live testimony — before returning its indictment.

The defense has also expended much time and energy, perhaps vexing the court in the process, trying to obtain the testimony of two prosecutors, all over the adamant opposition of the government. There is now a distinct possibility that their testimony may be cumulative of the audio recording. The recording will likely reveal the full truth about how they spoke to Ms. Reid and how she

responded to them.

**Prospective Prejudice**

**The Defense Trial Preparations Have Been Thrown Into Disarray**

The defense trial preparations are in shambles.  We thought we knew the universe of the evidence relating to what Ms. Reid said—the rough notes and reports of the interviews and the transcript of the grand jury proceeding.  Now, less than two weeks before trial we learn that a recording of the grand jury proceeding exists, but that we won't be able to hear it before July 7, at the earliest, six days before trial is scheduled to start.  We must listen to it and then return to the drawing board on basic defense trial tactics — what arguments to make, what to stress in cross examination, whether to call the witnesses we have already informed the court we might call, and whether our client should testify. Filing in limine motions and a trial brief prior to evaluating the best evidence of the key evidence is problematic and impractical.

**Brady Violations Have Likely Occurred**

*Brady* violations will likely become apparent once we are able to listen tothe tape. To the extent the tape shows Ms. Reid's hesitation or confusion or agitation or belligerence from her questioners, particularly where this is not apparent from the cold record, the evidence is exculpatory and the

Michael Nance
Attorney at Law
P.O. Box 11276
Bainbridge  Island , WA 98110
(206) 624-3211

government'sfailure to timely produce constitutes a clear *Brady* violation, made worse by its repeated insistence that Ms. Reid was never confused or hesitant or intimidated.

**Dismissal Is the Appropriate Remedy**

This motion to dismiss stems not from a dispute about new evidence appearing at the last minute, but from key evidence that has existed for over three years in the exclusive custody and control of the government  and which has been kept from the defense.  This has occurred in the face of active and repeated defense efforts to obtain all of Ms. Reid's recorded statements.  The government's response that all Rule 16 had been provided lulled us into believing that we had everything to which we are entitled.  In the case of an egregious violation like this, dismissal is amply justified.

The government has relentlessly pursued Ms. Reid for supposedly falsely denying that she made certain statements during an interview by two FBI agents who showed up unannounced at her house. The wisdom or fairness of this pursuit of a mentally ill, drug addicted woman for not telling the government what it hopes to hear is a topic for another day.  But if the government is going to play Detective Javert, it also needs to play by the rules and should face the consequences of failing to do so.

Michael Nance
Attorney at Law
P.O. Box 11276
Bainbridge  Island , WA 98110
(206) 624-3211

A recent Ninth Circuit case, *United States v. Bundy*, 969 F.3d. 1019 (9th Cir. 2020), also considered discovery violations in a case involving allegations of falsestatement and upheld the trial court's dismissal with prejudice for discovery violations.  A dismissal for a discovery violation is appropriate if no other lesser sanction will remedy the harm or maintain the integrity of the courts.  *Id*.

## Conclusion

The government's discovery violation in failing to timely provide a recording of Ms.Reid's grand jury statements was flagrant and extreme.  If the government did not intentionally hide the evidence, it was at the least reckless and contemptuous of the rules.  It did not "discover" a recording in its own possession and control for the past three and a half years until less than two weeks before trial and, even then, only after being prodded by the defense. The government's violations inures to the prejudice of Ms. Reid.  Dismissal is the proper remedy.[1]

---

[1] A lesser, if inadequate remedy, would be a trial continuance to permit a full evaluation of the audio recording and a re-evaluation of tactical defense strategy. A trial delay would not harm the government or its investigation.  No one else has been charged in the investigation, and nothing at a trial of Ms. Reid will likely impact the Wales murder investigation.  On the other hand, Ms. Reid is under strict pretrial supervision and ongoing trial anxiety and the one most aggrieved by a further delay.  If a dismissal is denied, a trial continuance is essential for Ms. Reid to receive the defense to which she is entitled.

Michael Nance
Attorney at Law
P.O. Box 11276
Bainbridge  Island , WA 98110
(206) 624-3211

Respectfully submitted this 2nd day of July, 2021.

/s/ Michael Nance, WSBA #13933
/s/ Robert Gombiner, WSBA #16059

Attorneys for Shawna Reid

Michael Nance
Attorney at Law
P.O. Box 11276
Bainbridge  Island , WA 98110
(206) 624-3211

**Certificate of Service**

I hereby certify that on the 2nd day of July, 2021, I electronically filed the foregoing with the clerk of the court using the CM/ECF system. Notice of this filing will be sent electronically to counsel of record for other parties.


/s/ Michael Nance
*email:* *michaelnancelaw@gmail.com*