Honorable James Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON, SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR19-117 JLR |
| | ) | |
| Plaintiff, | ) | DEFENSE TRIAL MEMORANDUM |
| | ) | |
| v. | ) | |
| | ) | |
| SHAWNA REID, | ) | |
| Defendant. | ) | |
| _____ | ) | |

Defendant Shawn Reid is charged by indictment with making false declarations before the grand jury and obstruction of justice, respective violations of 18 USC §1623 and 18 USC §1503, relating to statements she made to government authorities in 2017 and 2018.

Trial is now scheduled to commence July 13. Several matters are pending, including a two dispositive defense motion to dismiss.

During the course of the investigation in late 2017 investigators questioned Ms. Reid. In February 2018 Ms. Reid appeared before the grand jury pursuant to a subpoena and compulsion order. The charges concern what she initially told investigators and whether she falsely denied making those statements at a later time.

Michael Nance
Attorney at Law
P.O. Box 11276
Bainbridge Island, WA 98110
(206) 624-3211

On August 23, 2017, FBI Agent Josh Anderson and Seattle police department Detective Thomas Conrad arrived unannounced at the home of Shawna Reid to interview her concerning her relationship with her former boyfriend, "suspect #1".[1]  Ms. Reid, the mother of a five-year-old baby, was at the house alone.  She was taking several medications for anxiety and depression.

Detective Conrad was the primary questioner.

The interview lasted at least half an hour.  Detective Conrad and Agent Anderson both took notes.  Detective Conrad's notes are about half a page in length and Agent Anderson's about a page and a half.

The notes do not purport to be a verbatim account of what Ms. Reid stated.  Ms. Reid was never shown either the notes or the written reports generated from them to verify their accuracy or completeness.

No recording was made of the interview and at no time during the interview was Ms. Reid ever asked if she would object to a recording.  Nor was any one-party consent recording, allowed by federal law, made by the officers.

Ms. Reid was interviewed again on August 25, 2017, this time by FBI Agent Russell Fox along with Detective Conrad.  Again, no recording was made.  The defense

---

[1] As noted in other pleadings the redaction to "suspect #1" distorts the evidence and is prejudicial to Ms. Reid.

Michael Nance
Attorney at Law
P.O. Box 11276
Bainbridge Island, WA 98110
(206) 624-3211

has received only a short set of Conrad' rough notes, less than a page in length, and a short typewritten report of the interview. According to this report, Ms. Reid denied telling the agents at the initial interview that suspect #1 had told her he was involved in a murder of a judge or attorney general.

Ms. Reid was subpoenaed to appear before a grand jury on December 7, 2017. Prior to the appearance, she was interviewed for a third time by Agent Fox. Also present was AUSA Joe Wheatley. This time Ms. Reid acknowledged saying at the August 23rd interview that she had stated that CG told her about being involved in a murder but that her statements were a mistake or the product of confusion.

Ms. Reid did not appear before the grand jury on December 7th. Instead, an attorney, Kevin Peck, was appointed to represent her. She was summoned to appear before the grand jury on February 28, 2018. At that proceeding she testified under the provisions of an immunity letter. The government falsely advised Ms. Reid during the grand jury proceeding that the immunity letter required Ms. Reid to incriminate herself and implicate herself.

At the proceeding, Ms. Reid first denied making any statements at the August 23rd interview that suspect #1 had previously told her about being involved in a murder of a judge or attorney general who lived in a house on a hill. She, then, however, as the

government explicitly concedes, recanted and acknowledged that she had made such statements, although insisting that the statements were not true.

The only discovery provided to the defense consists of the rough notes of Detective Conrad and FBI S/A Anderson and Conrad's written report concerning the August 23rd interview, Conrad's rough notes and written report of the August 25th interview, and a written report of the December 7 interview.

Although the government has only sketchy notes and no recording or other evidence of what Ms. Reid said at the August 23rd interview it has indicted her for denying very specific statements attributed to her at that interview.

The Indictment charges that Ms. Reid made false declarations to the grand jury by answering "No" to the questions "In your first interview, did you say to the FBI that [Suspect #1] bragged to you about [Suspect #1's] involvement in the murder of a, quote, judge or an attorney that lives on top of a hill, end quote", and "In your first interview, did you say to the FBI that [Suspect #1] bragged that the murder victim was someone of importance like a judge or an attorney general?".

In order to prove this charge, the government must (1) prove that Ms. Reid made this specific statement and (2) that when she replied "No" she understood the question and deliberately made a false answer.  It is not enough merely for the government to establish that at the August 23 interview Ms. Reid was asked some question about suspect

#1's involvement in a murder and gave some answer. The question that the government alleges was asked of Ms. Reid requires that it establish that Ms. Reid said that suspect #1 "bragged" about his involvement in a murder and not just that she said he merely mentioned his involvement, and that he talked about a "judge or an attorney" and not about a "judge or an attorney general." The second question requires that the government prove beyond a reasonable doubt that Ms. Reid told officers that suspect #1 "bragged" about the murder victim being "someone of importance like a judge or an attorney general." (Nowhere in the notes of either Detective Conrad or Agent Anderson is there any mention of Ms. Reid referring to the murder victim being "someone of importance.") Moreover, according to the report of the August 25th interview Detective Conrad did not tell Reid that in the first interview she had referred to the victim as "someone of importance like a judge or attorney general.

The evidence will establish that the typewritten report of the August 23, 2017 interview omits much information from the contemporaneous notes but includes much information not found in the notes and also contains information that agents did not obtain from Ms. Reid.

Nothing in either any of the notes or the grand jury recording, itself, shows what the grand jury was investigating or that Ms. Reid was told what the grand jury was investigating. The government must show what the grand jury was investigating and that Ms. Reid intended to obstruct this investigation and that her allegedly false answers

Michael Nance
Attorney at Law
P.O. Box 11276
Bainbridge Island, WA 98110
(206) 624-3211

materially hindered the grand jury's investigation. The government must also show for the obstruction of justice count that a "substantial" part of the defendant's motive for any untruths was to obstruct justice. *United States v. Smith*, 831 F.3d 1207 (9th Cir. 2016). It is unclear how the government can even begin to meet its burdens in the absence of any evidence as to the purpose of the grand jury and the absence of any evidence that Ms. Reid was told what its purpose was at the time she testified.

**Withdrawal of Stipulation**

The defense previously agreed informally to stipulate to the admission of the transcript of Ms. Reid's grand jury proceeding. Since then, the government revealed that an audio recording of the proceedings exists. Because the transcript is the best evidence, the defense withdraws from its stipulation and now objects to the admission of the transcript.

**Attorney-Client Privilege**

Ms. Reid's attorney at the time of the proceedings, Judge Kevin Peck, may testify for the defense. The defense agrees with the government that to the extent he testifies about any confidential communications with Ms. Reid, this waives the attorney-client privilege as to those communications. However, Mr. Peck may be questioned about matters relating to his representation of Ms. Reid that do not involve any communications

with her, such as whether he received from the government prior to her testimony any of the reports and notes of the FBI interviews without any waiver of the privilege occurring.

**Other defense witnesses**

In light of the new evidence (the audiotape of Ms. Reid's testimony), the defense is reevaluating the need for all of its endorsed witnesses.

Respectfully submitted this 6th day of July, 2019.

/s/ Michael Nance
/s/ Robert Gombiner
Attorneys for Shawna Reid