Honorable James Robart

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON, SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR19-117 JLR |
| | ) | |
| Plaintiff, | ) | REVISED DEFENSE MOTION |
| | ) | TO DISMISS FOR DISCOVERY |
| v. | ) | AND *BRADY* VIOLATION |
| | ) | |
| SHAWNA REID, | ) | |
| Defendant. | ) | **Evidentiary hearing requested** |
| _____ | ) | Noted: July 22 , 2021 |

Defendant Shawna Reid moves for dismissal of the charges because of the government's flagrant breach of its discovery obligations to timely produce an audio recording of her grand jury testimony. Unless the court dismisses based on the present record, an evidentiary hearing is required in order to explore the circumstances concerning the recording of this testimony and its tardy production.

We recognize that dismissal is an extreme sanction. However, no lesser remedy will cure the harm done to Ms. Reid, preserve the integrity of the Court and the judicial system, or deter the government from continuing to recklessly disregard the rules and the Constitution

**Facts**

Ms. Reid's sole grand jury appearance occurred on February 28, 2018. She was indicted for statements made during that testimony on June 20, 2019, and arraigned on

August 20, 2019, when she requested full discovery under the local rule.  Dkt. # 9.

1. **Defense Requests For Recorded Statements of Ms. Reid**

On October 18, 2019, counsel for Ms. Reid sent the government a discovery letter. Redacted version in Exhibit 1.  The letter specifically asked for:

> "[a]ny written or recorded statements … made by Ms. Reid to any person, whether a government investigator/official or not, relating to the Thomas Wales matter, including any statement(s) Ms. Reid made regarding [suspect #1]. This request includes, but is not limited to, any statement the government might potentially use in its case-in- chief."

Exhibit 1, paragraph 3. The defense also requested any information about how the grand jury that indicted Ms. Reid was informed of her earlier grand jury testimony and whether the testimony was play-acted or the transcript read into the record.  Exhibit 1, paragraph 13.   Federal Criminal Rule 16, specifically referenced at the beginning of the discovery letter, requires that the government provide to the defense any recording of a defendant's testimony before a grand jury if it relates to the case.  FRCrP16 (a)(1)(B)(iii).

Shortly after Mr. Reid's arraignment, the government furnished the defense with a transcript of Ms. Reid's grand jury testimony.  The front page of the transcript provided to the defense includes the notation ,"Proceedings recorded by mechanical stenography". Exhibit 2.   Nowhere does the transcript indicate that the proceedings were audio recorded.

The government has continually represented to the defense that it has complied with all of its discovery obligations.  On January 28, 2020, in response to the defense

discovery letter of October 18, 2019, it specifically assured the defense both that it had provided Ms. Reid's statements and that if it learned of any other statements to other persons that were discoverable under *Brady* or Rule 16(a) it would "promptly" furnish them to the defense. Exhibit 3. At no time until July 1, 2021, did the government even hint that any audio recording might exist.

**2. Defense Motions**

As the case progressed, the defense came to believe it was critical for the jury to understand the full dynamics of Ms. Reid's appearance before the grand jury, including her interactions with the prosecutors, and her demeanor and that of the prosecutors. Because the only evidence we possessed was the cold transcript, we moved to subpoena two of the prosecutors present at the hearing to flesh out the record and to more fully develop the circumstances and atmosphere of Ms. Reid's grand jury testimony.

The government vigorously opposed this motion and chastised the defense for not exhausting other avenues, such as seeking to use as witnesses the grand jury foreman or the stenographer. Gov't Response, Dkt. # 80 at 10-12. The government also confidently asserted that the transcript showed that all of Ms. Reid's answers were "clear and concise," that the transcript demonstrated no evidence of intimidation, and that "nothing in the grand jury transcripts shows the defendant did not understand the questions or struggled as to what they meant." Gov't Response to Motion at 8.

The Court convened a hearing on January 28, 2021, to consider the motion to subpoena the prosecutors. The defense and the Court understood that the only evidence

of the grand jury proceeding was the written transcript and that it was in that context that the motion had to be decided. As the court noted at one point, "Every case I have found, says basically, that if there is a transcript the transcript is the best evidence." T 8. At the time the Court made this observation it was, of course, unaware that the real best evidence — the audio recording — existed but had not been revealed by the government. The Court ultimately granted the defense motion to subpoena the prosecutors.

At the pretrial conference on June 14, 2021, there was extensive discussion about the prosecutor witnesses and how they would appear but not a word about any audio recording of the grand jury testimony.

### 3. Defense requests government assurance that no recording existed

As the defense trial preparations entered its final stage, we became even more conscious of the critical relevance of the tone and tenor of Ms. Reid's performance before the grand jury: not only what she said in her testimony but how she said it and the manner and tone in which the questions were asked and in her answers. A cold transcript did not reflect the full story. To rule out even the most remote possibility (since we had already been assured almost eighteen months earlier that all Rule 16 discovery had been produced), we sought to confirm that no recording existed. On June 21, 2021, we asked for this confirmation by email. When, after a week had passed without a response, we sent a second one. On July 1 — just days before trial —the government responded that an audio recording *did* exist, that it "was requesting it" and would send us a copy when the recording was received. A copy of the tape was not actually produced until the

afternoon of July 5.

**4. The audio recording revealed**

Defense counsel have since listened to the tape. The recording brings out crucially exculpatory evidence not apparent from the transcript. Ms. Reid presents as someone trying her best to be helpful and honest but confused and upset by the questioning. The tape also captures the aggressive and confrontational tone of one of the prosecutors, Mr. Clymer. Overall, the tape supports the defense contention that Ms.Reid was trying to testify truthfully under very trying circumstances and may well have been confused and/ or intimidated in the moment.

## ARGUMENT

### Dismissal is the proper remedy for the *Brady* violation.

A district court may dismiss an indictment under its inherent supervisory powers "(1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct." *United States v. Struckman*, 611 F.3d 560, 574 (9th Cir. 2010). A recent case approving a dismissal for a severe discovery and *Brady* violation, *United States v. Bundy*, 968 F.3d. 1019 (9th Cir. 2020), employs a holistic review of the violations and their impact and extensively examines the scope of a trial court's discretion in fashioning the proper remedy. The Court should follow *Bundy's* approach and consider the following circumstances.

1. **The government egregiously flouted mandatory federal court rules and Constitutional requirements.**

The newly available audiotape of the testimony shows Ms. Reid's hesitation and confusion and apparent agitation or belligerence from her questioners. The government's failure to timely produce the tape constitutes a clear *Brady* violation, made worse by its repeated insistence that Ms. Reid was never confused, hesitant or intimidated.

First, the Federal Rules of Criminal Procedure require that the government produce to the defense the recorded testimony of a criminal defendant who testifies before a grand jury. FRCrP 16 (a) (iii). In this case, at arraignment and thereafter in a discovery letter, Ms. Reid expressly invoked these rules and asked for any such recordings.

Second, FRCrP 6 (e) (1) mandates that all grand jury proceedings be recorded and that, in the absence of a court order to the contrary, *"an attorney for the government will retain control of the recording"* (emphasis supplied). The rule is discussed in *United States v. Cardenas-Mendoza,* 579 F.3d 1024, 1031 (9th Cir. 2009), a case rejecting a government excuse for failing to produce certain grand jury testimony. The government claimed that the tapes of the grand jury proceeding were in the physical control of the court reporter, who had died before a transcript was made. The *Cardenas-Mendoza* court was unpersuaded:

> In this case, the court reporter had permission to retain physical custody of the tape. But that permission did not relieve the government of its obligation to retain the recording. Because Fed.

>Rule Crim. P. 6(e)(1) charges the government with retaining copies of grand jury proceedings, *it is in possession of the court reporter's notes or audio tapes as soon as the recording occurs*. (Emphasis supplied.)

The government has been in possession of the audiotape in this case since February 28, 2018, and cannot shift responsibility for failing to produce the tape to the court reporter or to anyone else.

Third, *Brady v. Maryland* and its progeny impose the constitutional requirement that the government disclose exculpatory evidence within its control. The audiotape constitutes exculpatory evidence and was within the control of the government. The tape is obviously relevant to Ms. Reid's state of mind and her demeanor while testifying to a degree not apparent from the transcript of the same testimony. It tends to exculpate her from the charge that she deliberately told a falsehood to the grand jury.

Exculpatory evidence includes evidence that is favorable to the defense, meaning "evidence that tends to prove the innocence of the defendant." *Amado v. Gonzalez*, 758 F. 3d 1119, 1134 (9th Cir. 2014); *United States v. Cano*, 934 F.3d 1002, 1023 (9th Cir. 2019) (observing that *Brady* requires the government disclose "material, exculpatory, or otherwise helpful" evidence). "Any evidence that would tend to call the government's case into doubt is favorable for *Brady* purposes." *Milke v. Ryan*, 711 F.3d 998, 1012 (9th Cir. 2013). See also *United States v. Bundy*, 968 F.3d 1019, 1038-39 (9th Cir. 2020) (evidence was exculpatory because it rebutted government's theory). "Exculpatory" connotes a broader category of evidence that, "if disclosed and use effectively, may make

the difference between conviction and acquittal." *Bagley*, 473 U.S. at 676.

It is no excuse that the government prosecutors could not have known the relevance of *Brady* material it withheld or somehow lacked personal knowledge. *Bundy* flatly rejects this excuse:

> Someone in the government made a conscious choice to withhold [this evidence]. It may not have been a malicious choice, but it also was not a matter of simple oversight. At best, the government failed to appreciate the relevance of the evidence. At worst, it sought to handicap the defendant by withholding evidence directly relevant to mens rea. In either circumstance, the government fell well short of its obligations to work toward fairly and faithfully dispensing justice rather than simply notching another win.

*Id.,* 968 F.3d at 1041.

It is beyond dispute that, as a matter of law and fact, the government has possessed and controlled the audiotape for three and a half years, almost all of it while under a specific obligation to produce it to the defense. In a case based on the substance of Ms. Reid's grand jury testimony, and after a specific defense request for full discovery, even a cursory inquiry by the prosecution team of the court reporter about a tape would have avoided the present violation. This is not a situation where a discovery/*Brady* situation first materializes near the time of trial nor one where the government is unaware of the evidence (for example, a police report inadvertently misplaced). Instead, this violation festered for almost two years.

**2. Prejudice to Ms. Reid is substantial and irreparable.**

The government's failure to timely provide the defense with the most important

evidence in the case -- the audiotape of the very testimony it has indicted as criminal — is deeply and irreparably prejudicial to Ms. Reid.

### a. Prejudice that has already occurred

The defense motions and the Court's rulings presume that the only evidence of what occurred during Ms. Reid's grand jury is the transcript. We know this to be false. The belatedly disclosed evidence casts into doubt the basis for the Court's ruling on the original defense motion to dismiss. The defense argued a very important motion, and the Court denied it with both the defense and the Court operating on the false assumption that the transcript was the best evidence of her testimony.

The Court denied Ms. Reid's motion to dismiss due to the government's false statement to her about the compulsion order's requirements, largely on the ground that Ms. Reid could not show she was confused or mistaken. Dkt. #69 at 10. The audio recording of her testimony actually manifests the very confusion and mistake the court found lacking in the transcript. Confusion and mistake are evident in her delivery and presentation, as captured in the tape. The transcript is merely an aid to understanding the recording and not a substitute for it. If the case is not dismissed on the grounds advanced in the present motion, the Court should, in light of the new best evidence, revisit the issues raised in the original defense motion to dismiss.

The defense also has repeatedly sought, both by discovery letter and by motion, to ascertain the circumstances under which the indicting grand jury considered Ms. Reid's

prior testimony. After an *in camera* review of material provided it by the government the Court denied our motion. Dkt. #73. But, the Court conducted its review of the grand jury testimony unaware that the indicting grand jury apparently did not hear the best evidence — the actual recording of Ms. Reid's live testimony — before returning its indictment. This issue should be revisited.

The defense has also expended much time and energy trying to obtain the testimony of two prosecutors, all over the adamant opposition of the government. There is now a distinct possibility that their testimony may be cumulative of the audio recording, which reveals the truth about how they spoke to Ms. Reid and how she responded to them.

### b. Prospective Prejudice

To date the government's malfeasance has done little to affect its trial preparation or cause it any prejudice, but the long delay has exacted a pronounced personal toll on Ms. Reid, who remains under legal peril some three and a half years after providing compelled testimony.

Until last week her appointed lawyers have expended their time and energies toward defending a false statement and obstruction case by trying to re-construct a grand jury setting from a cold transcript and resorting to (probably antagonistic) government prosecutors as compelled defense witnesses. That tactical approach is now obsolete and a new one must be built from scratch.

### 3. Dismissal is the appropriate remedy to preserve the integrity of the judicial process and make the government follow the rules.

Grand jury proceedings are unique because, although they are crucial to the justice system, they occur without participation from the defense and with little or no judicial oversight. The courts and the defense both depend on the government following basic rules to keep the system fair, honest and accountable. In this case, but for the fortuitous response to repeated defense emails, the discovery of the government's failure to comply with these rules would have gone undetected and the trial commenced with critical exculpatory evidence stashed in a court reporter's computer.

To date, the only impact of the audiotape revelation has been to again delay the trial. This is hardly a sanction on the government. To the contrary, it is Ms. Reid, still bound by strict pretrial supervision conditions and living with ongoing anxiety about her fate, who suffers from more delay.

Merely chastising the government, which has already been reprimanded for its past misconduct before the grand jury, is not sufficient. These violations were not ambiguous or only apparent in hindsight. They are, rather, clear breaches of basic, well-established rules and essential constitutional rights. The discovery of the violations only after repeated prodding by the defense is an aggravating factor.

A dismissal would not impose a cost to public safety. As the Court knows, Ms. Reid was questioned by the FBI four years ago about her knowledge of Suspect #1's possible involvement in a long-ago murder. Since then, Suspect #1 has not been arrested

or charged, and Ms. Reid is still adamant that she has no information to aid the government's investigation. Even if she proceeds to trial and is somehow convicted, the government's murder investigation will not be advanced.

Dismissal of this case will have the salutary effect of stating to both the government and the public that the courts take the rules and the Constitution seriously. Not dismissing the case will send the opposite message.

## Conclusion

The government's discovery and *Brady* violation in failing to timely provide a recording of Ms.Reid's grand jury statements -- the very matter for which she was indicted — was flagrant and extreme. Even if the government did not intentionally hide this evidence, it was at least reckless and contemptuous of the rules.

To remedy this violation, preserve the integrity of the court, and deter future misconduct by the government, a dismissal of the charges is the proper course of action.

Respectfully submitted this 15th day of July, 2021.

/s/ Michael Nance, WSBA #13933
/s/ Robert Gombiner, WSBA #16059
Attorneys for Shawna Reid

## Certificate of Service

I hereby certify that on the 15th day of July, 2021, I electronically filed the foregoing with the clerk of the court using the CM/ECF system. Notice of this filing will be sent electronically to counsel of record for other parties.

/s/ Michael Nance
email: michaelnancelaw@gmail.com

Michael Nance
Attorney at Law
P.O. Box 11276
Bainbridge Island, WA 98110
(206) 624-3211