The Honorable James L. Robart

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

                    Plaintiff,

      v.

SHAWNA REID,

                    Defendant.

CASE NO. CR19-117 JLR

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR DISCOVERY AND *BRADY* VIOLATION**

The United States of America, by and through its counsel of record, Nicholas L. McQuaid, Acting Assistant Attorney General, United States Department of Justice, and Matthew Hoff and Christina Taylor, Department of Justice Trial Attorneys, respectfully submits this opposition to Defendant Shawna Reid's Revised Motion to Dismiss for Discovery and *Brady* Violation.  [Docket #146].

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY.

On February 28, 2018, the Defendant testified before a federal Grand Jury in the Western District of Washington.  Subsequently, on June 20, 2019, a different federal Grand Jury returned an indictment against the Defendant in the present case based in part on statements she made during her February 28, 2018 Grand Jury testimony.  On August 23,

United States' Opposition to Defendant's Motion to
Dismiss for Discovery and *Brady* Violation
*United States* v. *Reid*, No. CR19-117JLR – 1

ASSISTANT ATTORNEY GENERAL
1301 NEW YORK AVENUE, NW
SUITE 700
WASHINGTON, D.C. 20005
(202) 514-3594

2019, the Government provided the Defendant with discovery, including the transcript of her Grand Jury testimony.  As conceded by the Defendant, "[n]owhere in the transcript is any indication that the proceedings were audio recorded."  Docket #146 at 2.  In fact, the transcript included the following statement by the court reporter: "Proceeding recorded by mechanical stenography."  *Id.*, Exhibit 2.

On June 21, 2021, the Defendant specifically asked the Government if an audio recording of the Defendant's testimony existed.  Although the Government had no reason to believe that such a recording existed, the Government immediately contacted the court reporter and inquired if an audio recording of the Defendant's Grand Jury testimony existed.  On June 22, 2021, the court reporter service notified the Government that an audio recording of the Defendant's Grand Jury testimony did, in fact, exist.  Accordingly,  on June 23, 2021, the Government filed an application *ex parte* and *under seal* with the Court.  The Court issued an order granting the Government's application on July 1, 2021; that same date, the Government immediately notified the Defendant of the existence of the recording and requested that the court reporter produce a copy of the recording.  The Government received a copy of the recording on July 5, 2021 and provided a copy to the Defendant on the same date.

Prior to June 22, 2021, the Government was unaware that an audio recording of the Defendant's Grand Jury testimony existed. Specifically, the attorneys who were present during the Defendant's February 28, 2018 Grand Jury appearance did not know that the court reporter was audio recording the testimony. During a July 6, 2021, conversation, the Grand Jury court reporter told the Government that she did not advise anyone present during the Defendant's February 28, 2018 Grand Jury testimony that she was audio recording. The court reporter went on to state that while she routinely audio records all Grand Jury testimony, she relies on the audio only as back-up to her notes. The audio

United States' Opposition to Defendant's Motion to
Dismiss for Discovery and *Brady* Violation
*United States* v. *Reid*, No. CR19-117JLR – 2

ASSISTANT ATTORNEY GENERAL
1301 NEW YORK AVENUE, NW
SUITE 700
WASHINGTON, D.C. 20005
(202) 514-3594

1  recording is done through software on the court reporter's computer and not with a separate
2  recording device that would have been visible to others in the room.

3        The audio recording of the Defendant's Grand Jury testimony lasts 58 minutes and
4  55 seconds, and the transcript accurately reflects what is contained in the audio recording.

5                    **II.     GOVERNING LAW**

6        Under Fed. R. Crim. Proc. 6(e)(1), the Government is charged with maintaining
7  possession of all recordings, court reporter's notes, and any transcripts prepared from those
8  notes pertaining to Grand Jury proceedings. Unless otherwise provided, the Government
9  "must not disclose a matter occurring before the grand jury." Fed. R. Crim. Proc.
10  6(e)(2)(B). However, the Court may authorize disclosure of Grand Jury material in
11  connection with a judicial proceeding. Fed. R. Crim. Proc. 6(e)(2)(E).

12        Fed. R. Crim. Proc. 16(a)(1)(B)(iii) provides that upon a defendant's request, the
13  government must disclose to the defendant "the defendant's recorded testimony before a
14  grand jury relating to the charged offense." Fed. R. Crim. Pro. 16(c) states "[a] party who
15  discovers additional evidence or material before or during trial must promptly disclose its
16  existence to the other party or the court if: (1) the evidence or material is subject to
17  discovery or inspection under this rule; and (2) the other party previously requested, or the
18  court ordered, its production." Fed. R. Crim. Pro. 16(d)(2) provides the Court with
19  remedies for a failure to comply with discovery obligations, including "(A) order[ing] that
20  party to permit the discovery or inspection; specify[ing] its time, place, and manner; and
21  prescrib[ing] other just terms and conditions; (B) grant[ing] a continuance; (C)
22  prohibit[ing] that party from introducing the undisclosed evidence: or (D) enter[ing] any
23  other order that is just under the circumstances."

24        "The appropriate sanction for a failure to comply with a discovery rule should rest
25  in the district judge's sound discretion." *United States v. Valencia*, 656 F.2d 412, 415 (9th
26  Cir. 1981). "A district court may dismiss an indictment for a violation of due process or

27  United States' Opposition to Defendant's Motion to
    Dismiss for Discovery and *Brady* Violation
28  *United States* v. *Reid*, No. CR19-117JLR – 3

                                   ASSISTANT ATTORNEY GENERAL
                                   1301 NEW YORK AVENUE, NW
                                   SUITE 700
                                   WASHINGTON, D.C. 20005
                                   (202) 514-3594

1    pursuant to its supervisory powers." *United States v. Kearns*, 5 F.3d 1251, 1253 (9th Cir.
2    1993).  However, "[t]o warrant dismissal on due process grounds, government conduct
3    must be so grossly shocking and outrageous as to violate the universal sense of justice."
4    *Id.*; *see also United States v. Green*, 962 F.2d 938, 942 (9th Cir. 1992) (noting that the Due
5    Process argument "is usually raised in situations where law enforcement conduct involves
6    extreme physical or mental brutality or where the crime is 'manufactured by the
7    government from whole cloth'") (quoting *United States v. Smith*, 802 F.2d 1119, 1125 (9th
8    Cir. 1986) (internal quotation omitted)).

9          Dismissal under a court's supervisory powers is similarly disfavored. *United States
10   v. Jacobs*, 855 F.2d 652, 655 (9th Cir. 1988) (noting that "the drastic step of dismissing an
11   indictment is a disfavored remedy") (internal citations omitted).  In fact, the Supreme Court
12   has established "only three legitimate bases for the exercise of [this] supervisory power: to
13   implement a remedy for the violation of a recognized statutory or constitutional right; to
14   preserve judicial integrity by ensuring that a conviction rests on appropriate considerations
15   validly before a jury; and to deter future illegal conduct."  *United States v. Simpson*, 927
16   F.2d 1088, 1091 (9th Cir. 1991).  Thus, while a district court is "imbued with discretion in
17   the supervision of proceedings before it," *United States v. Bundy*, 968 F.3d 1019, 1023 (9th
18   Cir. 2020), the court may properly dismiss an indictment "only if the prosecutorial
19   misconduct [for failure to disclose evidence] (1) was flagrant, and (2) caused substantial
20   prejudice to the defendant." *Jacobs*, 855 F.2d at 655 (internal citations omitted); *see also*
21   *Bundy*, 968 F.3d at 1023 (finding that court "may dismiss an action when, in its judgment,
22   the defendant suffers substantial prejudice and where no lesser remedial action is
23   available") (citations omitted); *Kearns*, 5 F.3d at 1253 ("[D]ismissal of an indictment is an
24   appropriate sanction for a constitutional violation only where less drastic alternatives are
25   not available.").  Moreover, "[s]ubstantial prejudice alone does not entitle defendants to
26   have their indictments dismissed with prejudice. Nor is it sufficient that the government

27   United States' Opposition to Defendant's Motion to
     Dismiss for Discovery and *Brady* Violation
28   *United States* v. *Reid*, No. CR19-117JLR – 4

ASSISTANT ATTORNEY GENERAL
1301 New York Avenue, NW
Suite 700
Washington, D.C. 20005
(202) 514-3594

committed multiple Brady violations. To warrant dismissal of an indictment with prejudice, the government must have engaged in flagrant misconduct in withholding the evidence." *Bundy*, 968 F.3d at 1037.

## III.   ARGUMENT

### A.   The Defendant Has Not Suffered Substantial Prejudice.

As noted above, until June 22, 2021, both the Government and the Defendant had been operating under the same understanding that the transcript was the only available record of the Defendant's Grand Jury testimony.  Once the Government learned, however, that an audio recording of the Defendant's testimony did in fact exist, the Government took immediate steps to obtain a copy of that recording and disclosed it to the Defendant more than one week prior to the originally scheduled trial in this matter.[1]  The recording is not lengthy and the transcript, which the Defendant has had for almost two years, accurately reflects the Defendant's Grand Jury testimony as contained in the audio recording.  Thus, while the audio recording is newly disclosed, the Defendant has been in possession of the verbatim transcript of her Grand Jury testimony for almost two years and nothing about the audio recording changes the nature of the case as charged.  Further, the audio recording was not and has not been *withheld* from the Defendant; the Government did not know of its existence until June 22, 2021, promptly sought authorization to disclose the audio recording from the Court as required under Fed. R. Crim. Proc. 6(e), and upon receiving authorization, disclosed it  immediately upon receipt from the court reporter service.

More significantly, the Defendant has  failed to establish how the pre-trial disclosure of the audio recording substantially prejudices the Defendant's case. While the Defendant maintains that "[a] cold transcript did not reflect the full story" of the Defendant's Grand

---

[1]  On July 12, 2021, the Court *sua sponte* continued the trial date in this matter to September 16, 2021, due in part to the Defendant's filing of the instant motion and other motions.  Accordingly, the Defendant will have been in possession of the audio recording for more than 10 weeks prior to trial in this matter.

United States' Opposition to Defendant's Motion to
Dismiss for Discovery and *Brady* Violation
*United States* v. *Reid*, No. CR19-117JLR – 5

ASSISTANT ATTORNEY GENERAL
1301 NEW YORK AVENUE, NW
SUITE 700
WASHINGTON, D.C. 20005
(202) 514-3594

1  Jury testimony,  Docket #146 at 4 the Defendant does not establish (nor could she) how
2  disclosure of the audio recording – which the Defendant claims is "the real best evidence"[2]
3  — prior trial rises to the "flagrant" government misconduct required to justify dismissal of
4  the indictment. *Jacobs*, 855 F.2d at 655.

5      The Defendant's reliance on *United States v. Bundy* is misplaced.  In *Bundy*, the
6  Court granted a mistrial, and ultimately dismissed the indictment, after finding at multiple
7  hearings that the government had withheld evidence.  968 F.3d at 1023.   The Court
8  considered but rejected the less drastic remedy of a trial continuance since the jury had
9  already been empaneled and the government's repeated failures to disclose evidence
10 "deprived the defendants of the opportunity to better tailor their voir-dire strategy and make
11 stronger opening statements." *Id*. at 1029.   This is not the case here.  Not only has the
12 audio recording not been withheld, it has been produced in advance trial, it is a single item
13 of evidence, and it is not voluminous.  The Defendant has ample opportunity to review the
14 58-minute-55-second recording prior to trial and tailor their trial strategy based on the
15 audio recording.

16     *Kearns* is also instructive.    In *Kearns*, the prosecution disclosed a police
17 department's written agreement with an informant *during* trial within hours of the
18 prosecution's receipt of the agreement.  The defendant argued that the government's failure
19 to disclose the agreement in a timely manner deprived her of due process.  However, the
20 Court held that "even assuming that the failure to turn over the agreement in a timely

21
22
23
24
_____
25 [2] Notably, the Defendant acknowledges that the audio recording may well be cumulative evidence, *see* Docket #146
   at 10 given the anticipated testimony of Joseph Wheatley and David Jaffe.  Conversely, given the audio recording, the
26 testimony of Mr. Wheatley and/or Mr. Jaffe would arguably be cumulative; the Government therefore reserves the
   right to renew any objections to their testimony at trial.

27   United States' Opposition to Defendant's Motion to              ASSISTANT ATTORNEY GENERAL
     Dismiss for Discovery and *Brady* Violation                        1301 NEW YORK AVENUE, NW
28   *United States* v. *Reid*, No. CR19-117JLR – 6                             SUITE 700
                                                                     WASHINGTON, D.C. 20005
                                                                          (202) 514-3594

1  fashion qualifies as [a *Brady* violation]," it did not meet the standard of dismissal and
2  reversed the district court's dismissal of the indictment. *Kearns*, 5 F.3d at 1253.

3      In sum, even assuming *arguendo* that the Defendant could make the required
4  showing, there are certainly less drastic alternatives to dismissal available to the Court, as
5  discussed below.

6      **B.      No *Brady* Violation Occurred.**

7      "[T]he suppression by the prosecution of evidence favorable to an accused upon
8  request violates due process where the evidence is material either to guilt or to punishment,
9  irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S.
10  83, 87 (1963).  In *United States v. Gordon,* 844 F.2d 1397 (9th Cir. 1988), the defendant
11  argued that the Government violated *Brady* by providing the Defendant with additional
12  discovery at the close of the Government's case-in-chief. *See id.* at 1402. Approximately
13  six months prior to trial, the Defendant filed a pre-trial motion requesting that the
14  Government provide all *Brady* material. *See id.* at 1403. Sixteen days into trial, the defense
15  attorney specifically asked the Government if it had any visitor logs pertaining to the
16  Defendant. *See id.* The Government advised that there were visitor logs and allowed the
17  defense to review them. *See id.* In responding to the defendant's objection to the
18  introduction of the visitor logs at trial, the Court allowed the defendant to recall witnesses
19  to cross-examine them about the newly provided documents. *See id.*  The defendant
20  declined to recall witnesses and instead introduced the documents as defense exhibits. *See*
21  *id.*  In holding that no *Brady* violation occurred, the Court stated "*Brady* does not
22  necessarily require that the prosecution turn over exculpatory material *before* trial. To
23  escape the *Brady* sanction, disclosure 'must be made at a time when disclosure would be
24  of value to the accused.'" *Id.* at 1403 (emphasis in original) (citing *United States v.*
25  *Davenport,* 753 F.2d 1460, 1462 (9th Cir.1985)). The Court found that the "…defendants
26  had substantial opportunity to use the documents and to cure any prejudice caused by the

27  United States' Opposition to Defendant's Motion to
    Dismiss for Discovery and *Brady* Violation
28  *United States* v. *Reid*, No. CR19-117JLR – 7

ASSISTANT ATTORNEY GENERAL
1301 NEW YORK AVENUE, NW
SUITE 700
WASHINGTON, D.C. 20005
(202) 514-3594

delayed disclosure. Therefore, even assuming the documents were exculpatory and material, there was no due process violation under *Brady." Id.*

As a preliminary matter, the audio recording was not and has not been suppressed. As detailed above, the Government was not aware of its existence until June 22, 2021 and upon learning that an audio recording in fact existed, immediately took steps to obtain and disclose it to the Defendant.

Moreover, the Defendant has failed to articulate how the audio recording is exculpatory to the Defendant. Although the Defendant asserts that the audio recording "…brings out crucially exculpatory evidence not apparent from the transcript" and "…supports the defense contention that Ms. Reid was trying to testify truthfully under very trying circumstances and may well have been confused and/or intimidated in the moment," Docket #146 at 5, the Government's position is that the audio recording is not exculpatory but supports the charges that the Defendant made false statements before the Grand Jury. The resolution of this dispute and determination of what the audio recording proves is a matter properly submitted to the finder of fact in this case – a jury – rather than a basis for dismissal of the indictment.

The Defendant has also failed to explain how production of the 58-minute-55-second recording now more than two months prior to  trial is not "made at a time when disclosure would be of value to the accused," *Gordon*, 844 F.2d at 1403, particularly where, as here, the Defendant has had the information contained on the audio recording for over a year and a half through the grand jury transcript. Accordingly, even more so than in *Gordon,* the Defendant has "substantial opportunity" to review and use the audio recording

United States' Opposition to Defendant's Motion to
Dismiss for Discovery and *Brady* Violation
*United States* v. *Reid*, No. CR19-117JLR – 8

ASSISTANT ATTORNEY GENERAL
1301 NEW YORK AVENUE, NW
SUITE 700
WASHINGTON, D.C. 20005
(202) 514-3594

1  to cure any possible prejudice caused by any delayed disclosure.  Thus, dismissal of the

2  indictment is unwarranted.

3       **C.**    **Less Drastic Remedies Than Dismissal are Available.**

4       As provided in Fed. R. Crim. Pro. 16(d)(2), if the Court finds the Government failed

5  to make a timely disclosure of the audio recording, several alternatives to dismissal are

6  available to the Court for a failure to comply with Rule 16(a).  "The trial court should not

7  impose a sanction harsher than necessary to accomplish the goals of Rule 16."  *United*

8  *States v. Gee*, 695 F.2d 1165, 1168 (9th Cir. 1983).  "Moreover, the fact that rule 16

9  contains specific remedies for its violation eliminates any justification for an exercise of

10  supervisory power to create any other remedy for it."  *United States v. Gatto,* 763 F.2d

11  1040, 1046 (9th Cir. 1985).

12  Although pursuant to Rule 16(d)(2)(C), the Court may prohibit the Government from

13  introducing the audio recording at trial, when a "delay in disclosure…[does] not violate

14  any constitutional provision, federal statute, specific discovery order, or any other

15  recognized right except perhaps rule 16…the separation-of-powers principle [bars] the

16  district court from exercising any supervisory power to exclude the evidence." *Gatto*, 763

17  F.2d at 1046.  This is particularly salient here where the Court has already granted the most

18  appropriate alternative remedy under Rule 16(d)(2)(B), by continuing the trial date. With

19  a new trial date of September 16, 2021, the Defendant has more than enough time to adjust

20  her trial strategy based on the disclosure of the audio recording. Accordingly, any prejudice

21  that the Defendant might have suffered has been cured by the trial continuance and no other

22  sanctions are warranted.

23       **D.**    **The Court Should Not Revisit Its Prior Ruling.**

24       The Defendant also asks the Court to revisit the Court's prior decision, *see* Docket

25  #69, denying the Defendant's first request to dismiss the indictment "largely on the ground

26  that Ms. Reid could not show she was confused or mistaken."  Docket #146 at 9.

27  United States' Opposition to Defendant's Motion to
   Dismiss for Discovery and *Brady* Violation

28  *United States* v. *Reid*, No. CR19-117JLR – 9

Specifically, the Court previously found that "Ms. Reid does not offer any concrete examples of mistaken or confused testimony that resulted from the Government's erroneous instructions." Docket #69 at 10. However, despite having had the transcript of her Grand Jury testimony for almost two years, and even after receipt of the audio recording, the Defendant still cannot point to any concrete examples of mistaken or confused testimony that might have resulted from the Government's questions or any substantial prejudice from now having received the audio recording. Therefore, there is nothing that should compel the Court to revisit the Court's prior ruling. Further, the Court already reviewed, *in camera*, the Grand Jury materials that led to the indictment of the Defendant and denied the Defendant's motion for production of the Grand Jury materials, holding that the "none of the materials must be disclosed to Defendant Reid in order to avoid a 'possible injustice.'" *See* Docket #73 at 1-2 (citations omitted). The Court already having reviewed the transcript of the Defendant's Grand Jury testimony should not and need not revisit its prior ruling simply based on the audio recording, the contents of which are accurately reflected in the transcript.

## E.     No Evidentiary Hearing is Required

The Defendant has not identified any factual disputes, let alone any factual disputes relevant to the instant motion, that would warrant an evidentiary hearing. The Government has detailed the circumstances under which it discovered the existence of the audio recording and the steps it took to obtain the recording and promptly disclose it to the defense. The Defendant offers no contrary evidence; thus, there is no basis for an evidentiary hearing.

## IV.     CONCLUSION

For these reasons, Defendant's Motion to Dismiss for Discovery and *Brady* Violation should be denied.

Dated this 20th day of July, 2021.

United States' Opposition to Defendant's Motion to
Dismiss for Discovery and *Brady* Violation
*United States* v. *Reid*, No. CR19-117JLR – 10

ASSISTANT ATTORNEY GENERAL
1301 NEW YORK AVENUE, NW
SUITE 700
WASHINGTON, D.C. 20005
(202) 514-3594

Respectfully Submitted,

Nicholas L. McQuaid
Acting Assistant Attorney General

 *s/Matthew K. Hoff*
MATTHEW K. HOFF
Trial Attorney

*s/Christina Taylor*
CHRISTINA TAYLOR
Trial Attorney

United States' Opposition to Defendant's Motion to
Dismiss for Discovery and *Brady* Violation
*United States* v. *Reid*, No. CR19-117JLR – 11

ASSISTANT ATTORNEY GENERAL
1301 NEW YORK AVENUE, NW
SUITE 700
WASHINGTON, D.C. 20005
(202) 514-3594

CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2021, I electronically filed the foregoing with the
Clerk of the Court using the CM/ECF system which will send notification of such filing to
the attorney(s) of record for the defendant(s).


/s/ Christina Taylor
CHRISTINA TAYLOR
Trial Attorney
Organized Crime and Gang Section
U.S. Department of Justice
1301 New York Avenue, NW
Suite 700
Washington, D.C. 20005
Tel.: (202) 679-1034

United States' Opposition to Defendant's Motion to
Dismiss for Discovery and *Brady* Violation
*United States* v. *Reid*, No. CR19-117JLR – 12

ASSISTANT ATTORNEY GENERAL
1301 NEW YORK AVENUE, NW
SUITE 700
WASHINGTON, D.C. 20005
(202) 514-3594